### STULTZ et al. v. COUSINS.

(Circuit Court of Appeals, Sixth Circuit. June 5, 1917.)

No. 2961.

1. COURTS ⬡⟹323—FEDERAL COURTS—CITIZENSHIP OF PARTIES—EVIDENCE.

In an action by a citizen of North Carolina, brought in November, 1914, against defendants, sued as citizens of Tennessee, the testimony of one of the defendants that in July, 1914, he and his family moved to the District of Columbia, that he went there indefinitely, and did not have any certain length of time to stay, and that he had never since lived in Tennessee, did not sustain the burden of establishing a change of domicile, and a consequent loss of his citizenship in Tennessee.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 885, 886.]

2. COURTS ⬡⟹319—FEDERAL COURTS—CITIZENSHIP OF PARTIES—CHANGE PENDING SUIT.

The jurisdiction of a federal court, once acquired on the ground of citizenship, continues, regardless of any change in citizenship.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 864.]

3. DISMISSAL AND NONSUIT ⬡⟹26—DISMISSAL AS TO ONE JOINT TORT-FEASOR.

As an injured party may sue one or more or all joint tort-feasors, he may dismiss as to any defendant, and an action for libel was properly dismissed as to a defendant of whom the court did not have jurisdiction.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 46, 48–59.]

4. APPEAL AND ERROR ⬡⟹272(2)—NECESSITY OF EXCEPTIONS—DENIAL OF DIRECTED VERDICT.

The refusal of a request to instruct for the defendant on certain counts could not be reviewed, where no exception was taken to such refusal at the time, or at the trial in open court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 680.]

5. EVIDENCE ⬡⟹380—PICTURES—CRAYON PORTRAIT.

On the question of whether plaintiff was a white or a colored person, a crayon portrait of his great-uncle, identified as a true picture of the uncle, was admissible; the fact that it was a crayon representation, and not a photograph, going only to its weight.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1657.]

6. LIBEL AND SLANDER ⬡⟹19—CONSTRUCTION OF LANGUAGE USED.

A letter written to the master mechanic of a railroad by members of a railroad brotherhood, stating that evidence had come into their possession

---

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that plaintiff was not a full-blooded white, that he had been expelled for falsely answering questions, and that if the master mechanic desired further evidence "of the above being one-fourth negro" it would be furnished, amounted to a clear charge that plaintiff was of one-fourth negro blood.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 98, 99.]

7. LIBEL AND SLANDER ⚖==6(1)—CHARGING WHITE PERSON WITH BEING NEGRO.

Whatever the rule as to spoken words, the publication of a writing containing a false statement that a white man is of one-fourth negro blood is libelous per se, at least in a community in which marked social differences between the races are established by law or custom.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 6, 8½, 10, 15.]

8. APPEAL AND ERROR ⚖==1033(5)—EVIDENCE ⚖==5(2)—JUDICIAL NOTICE—ERRORS FAVORABLE TO APPELLANT.

On the trial of an action for falsely charging that plaintiff was of one-fourth negro blood, any error in leaving it to the jury to determine as a fact whether or not the relation of the two races in eastern Tennessee was such that a negro did not have the same esteem of his white neighbors as a white man, or that his race connections, if known, would hurt and lessen his standing in the community generally as a matter of social intercourse, and deprive him of the standing which he would otherwise have as a white man, was favorable to defendant, as the trial judge might have taken judicial notice of the racial situation in eastern Tennessee, and instructed that the charge was libelous per se.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4056; Evidence, Cent. Dig. § 4; Trial, Cent. Dig. § 587.]

9. LIBEL AND SLANDER ⚖==44(1)—PRIVILEGE—DISCHARGE OF DUTY.

Defendants were members of a railroad brotherhood, and employed as firemen on a railroad which confined its preferred runs and promotions to white men, and gave such runs and promotions on the basis of seniority. Plaintiff was senior to most of the defendants. Defendants caused a letter to be written to the master mechanic of the railroad, stating that plaintiff was one-fourth negro, and asking that his run be vacated on the ground that he was a nonpromotable man. *Held*, that the communication was in no sense privileged, as defendants owed no duty, contractual, customary, or moral, to notify the railroad that a fireman holding a promotional job had negro blood, but gave such information gratuitously and voluntarily, and in their own interest.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 133, 134.]

10. LIBEL AND SLANDER ⚖==56(2)—DEFENSES—BELIEF AS TO TRUTH.

Defendants' honest, but erroneous, belief in the truth of their written statement that plaintiff had negro blood was no defense to an action for libel.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 153.]

11. APPEAL AND ERROR ⚖==1004(1)—REVIEW—EXCESSIVENESS OF VERDICT.

An alleged excess in the verdict is a matter to be dealt with by the trial court, and not on writ of error by a federal appellate tribunal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3944.]

In Error to the District Court of the United States for the Northeastern Division of the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action by Isaac S. Cousins against B. Peter Stultz and others. Judgment for plaintiff, and defendants bring error. Affirmed.

⚖==For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

H. H. Shelton, of Winston-Salem, N. C., for plaintiffs in error.

James B. Cox and W. W. Belew, both of Johnson City, Tenn., for defendant in error.

Before WARRINGTON, MACK, and DENISON, Circuit Judges.

MACK, Circuit Judge. Action of libel by defendant in error against the 35 plaintiffs in error and Slagle, who was subsequently dismissed from the case, resulted in a verdict and judgment thereon for $3,400.

The parties were all members of the Erwin, Tenn., local of the Brotherhood of Locomotive Firemen and Enginemen and were employed as firemen on the Carolina, Clinchfield & Ohio Railway, which had its operating headquarters there. By custom, the preferred runs and promotion to enginemen were confined to white men, and, subject to examination, were given on the basis of seniority. Cousins was senior to 32 of the 36 defendants. As only white men were admitted to the brotherhood, applicants for membership were required to answer the question of race. Cousins had stated that he was a white man. After an investigation of rumors that he was a mulatto, he was expelled from the local on the charge of having falsely answered questions. Thereupon the following letter, which constituted the alleged libel, was written and sent on behalf and at the request of all of the defendants to the master mechanic of the railway:

> Brotherhood of Locomotive Firemen and Enginemen,
> Clinchfield Lodge No. 763.
>
> December 30, 1913.
>
> Mr. H. F. Staley, M. M., Erwin, Tenn.—Dear Sir: Some time ago evidence came into our possession of Isaac Cousins not being full-blooded white, and by a unanimous vote of the members of the B. of L. F. & E. he, Isaac Cousins, was expelled from the Brotherhood on account of falsely answering questions. By request of the Brotherhood I, as chairman, ask that the run he holds be vacated on the grounds that he is a nonpromotable man. If you desire any further evidence of the above being one-quarter negro, please notify us at once, and we will furnish you with same.
>
> Yours respectfully,      W. L. Spratt, Chairman.

This letter resulted in Cousins' loss of the preferred run and his transfer to a nonpreferred run.

In the caption of the declaration Cousins was alleged to be a citizen of North Carolina and the defendants citizens of Tennessee. The declaration was in three counts: The first, which the jury was in substance instructed to disregard, was based upon the theory that the letter charged a crime in plaintiff's having married and lived with a white woman in Tennessee, contrary to the Tennessee statute. The third count was based upon the theory of malicious interference with plaintiff's contract of employment. The second, upon which the trial clearly appears to have proceeded, alleged the libel in general terms, and also specified the loss of the preferred run as special damages. We proceed to a consideration of the alleged errors.

[1, 2] 1. Diversity of citizenship was properly averred; no issue was tendered thereon, and no inquiry instituted by the court. Defendant Martin, a citizen and resident of Tennessee prior to July, 1914, testified, however, that at that time he and his family moved to the Dis-

trict of Columbia; that he "went there indefinitely; I didn't have any certain length of time to stay"; that he never lived in Tennessee since then; and that he had moved to North Carolina after the action had been begun. This indefinite residence in the District of Columbia in November, 1914, when the action was brought, falls far short of sustaining the burden placed on defendant (Chase v. Wetzlar, 225 U. S. 79, 86, 32 Sup. Ct. 659, 56 L. Ed. 990) of establishing change of domicile, and a consequent loss of citizenship in Tennessee. There is no evidence that the change of residence was anything but temporary, and without an intention either to give up the old or to remain in the new home. As the jurisdiction of the court, once acquired, continues, regardless of any change in citizenship (Clarke v. Mathewson, 12 Pet. 164, 9 L. Ed. 1041) the subsequent removal to North Carolina is immaterial.

[3] 2. As an injured party may sue one or more or all joint tort-feasors, so, too, he may dismiss as to any defendant; and, as the court was without jurisdiction of Slagle, his dismissal before submission of the cause to the jury was entirely proper.

[4] 3. Whether a single request to instruct for the defendant on the second and third counts may be deemed equivalent to separate requests for such a charge on each of these counts, so as to require the reversal of a judgment on a general verdict, under the authority of Wilmington Mining Co. v. Fulton, 205 U. S. 77, 27 Sup. Ct. 412, 51 L. Ed. 708, because the third count was unsupported by the evidence, need not be determined, inasmuch as the record fails to disclose that an exception was taken to the refusal of the court to grant this request, either at the time (Johnson v. Garber, 73 Fed. 523, 19 C. C. A. 556; Phelps v. Mayer, 15 How. 160, 14 L. Ed. 643; Miller & Lux, Inc., v. Petrocelli, 236 Fed. 846, 852, 150 C. C. A. 108; and cases cited), or at the trial in open court (Gandia v. Pettingill, 222 U. S. 452, 459, 32 Sup. Ct. 127, 56 L. Ed. 267). Furthermore, it is apparent that both sides tried the case as alleged in the second count.

4. The evidence, while conflicting, so abundantly justified the submission of the issues made in this count to the jury, that it is unnecessary to review it here.

[5] 5. The admission in evidence of a crayon portrait of plaintiff's great-uncle and his white wife, made before the controversy arose and testified to by the plaintiff, who knew him, to be a true picture of the uncle, was entirely proper. That it was a crayon representation, and not a photograph, went only to its weight, not to its admissibility, as tending to show that the great-uncle was a white man. 1 Wigmore, Evidence, § 792 (3).

[6-8] 6. The letter was a clear allegation that plaintiff was of one-quarter negro blood. Whatever be the rule as to spoken words (see 36 L. R. A. [N. S.] 947, note), the authorities establish that the publication of a writing containing such a statement in respect to a white man is libelous per se, at least in a community in which marked social differences between the races are established by law or custom. Axton Fisher Tobacco Co. v. Evening Post, 169 Ky. 64, 76, 183 S. W. 269, L. R. A. 1916E, 667; Spencer v. Looney, 116 Va. 767, 82 S. E. 745; Flood v. News & Courier Co., 71 S. C. 112, 50 S. E. 637, 4 Ann. Cas.

685, and cases cited. The refusal to instruct for the defendants on the theory that the charge was libelous per se was therefore clearly proper. While the trial judge might have taken judicial notice of the racial situation in eastern Tennessee, and based thereon might have instructed the jury that the charge was libelous per se, he gave the defendants an opportunity to persuade the jury that the statement made in that particular section of Tennessee might not be libelous per se; he left it to the jury to determine as a fact whether or not the relation of the two races in eastern Tennessee was such that the negro does not have the same esteem of his white neighbors as a white man, or that his race connection, if known, hurts and lessens his standing in the community generally as a matter of social intercourse, and deprives him of the standing which he would otherwise have as a white man. Obviously, no complaint can be made by defendants of a charge which erred, if at all, in their favor.

[9, 10] 7. Defendants further contend that the court erred in not charging that the communication was conditionally privileged and in refusing, therefore, to submit to the jury the issue of actual malice. The defendants, however, owed no duty, contractual, customary, or moral, to notify the railroad that a fireman holding a promotional job had negro blood; this information was not sought; the giving of it was purely gratuitous and voluntary; it was done solely in the interest of all but four of the defendants. who were likely to benefit by the expected change in his position. Under these circumstances, the communication was in no sense privileged. Over v. Schiffling, 102 Ind. 191, 26 N. E. 91. Defendants' honest, but erroneous, belief in its truth, even if established, would furnish them no defense. "If the publication was libelous, the defendant took the risk." Peck v. Tribune Co., 214 U. S. 185, 29 Sup. Ct. 554, 53 L. Ed. 960, 16 Ann. Cas. 1075.

[11] 8. An alleged excess in the verdict is a matter to be dealt with by the trial court, and not on writ of error by a federal appellate tribunal. Southern Ry. Co. v. Bennett, 233 U. S. 80, 87, 34 Sup. Ct. 566, 58 L. Ed. 860; Texas & Pacific Ry. Co. v. Hill, 237 U. S. 208, 215, 35 Sup. Ct. 575, 59 L. Ed. 918.

9. We are unable to understand the persistence of counsel in assigning as error the refusal of the court to give an alleged requested instruction, despite the statement of the trial judge, in his memorandum opinion on the motion for a new trial, that no such instruction was requested at the conclusion of the charge. The record fails to disclose such a request at any time.

Judgment affirmed.