NATCHEZ TIMES PUBLISHING Co. *v.* DUNIGAN, Etc.

May 24, 1954

No. 39135 66 Adv. S. 41 72 So. 2d 681

*Berger & Callon, R. Brent Forman, C. F. Engle,* Natchez, for appellant.

*Riley & Johnson,* Natchez, for appellee.

ROBERDS, P. J.

Appellee is a white woman. Appellant is a corporation, owning, editing and publishing at Natchez, Mississippi, a newspaper called The Natchez Times. On December 19, 1951, The Natchez Times published an account of an automobile collision, which happened when appellee was driving one of the cars, in which article she was described as a Negro woman traveling in the company of two Negro men. The men were white. Appellee sued appellant for damages, alleging that the article was libelous. She recovered a judgment for $5,000, from which this appeal was taken.

The first question presented to us is whether the description in a writing that a white woman is a Negro is

libelous per se. It is well to give the setting. This is the article which appeared in the paper: "NEGROES ARRESTED AFTER HIT AND RUN ACCIDENT "Two Negroes were arrested this morning in connection with a wreck that occurred at 3:50 a. m. on Main Street. Charles Richard Powell, 25, was driving a Wolf Bread truck west on Main Street, police reported, when a 1949 Ford smashed into the front of his truck. The car then careened off knocking down a traffic light and a whiteway light, and continued on towards Pine Street.

"When police arrived on the scene, Powell told them that 'the car was driven by Negroes and can't get far because its damaged too bad.' Powell's car had a damaged front and left fender.

"The car was located by police within an hour parked in the 600 block on Madison Street, and was hauled to the Ford Motor Company. According to Lt. Craft it was established that a Negro woman, Mary Dungan, was driving the car at the time of the accident and James Manning drove it away from the scene of the accident. Manning parked the car on Madison, took the license plate off and while walking towards Jackson Street threw it away.

"Police added that the car belonged to Clyde Beasley of 108 Jackson Street who had let Manning borrow the car. Manning was arrested and charged with leaving the scene of the accident. Mary Dunagan was arrested and charged with wreckless driving."

The information in the article was taken by the reporter, from an account of the automobile accident contained in a report which the city police had made upon their records. We deem it unnecessary to copy that record. It is sufficient to say that the record described Powell as a white man. It did not purport to describe the race of the appellee nor of the two men who were in the automobile with her. It contained no prefix to the name of either. The report referred to the appellee as "Mary Dunagan."

It does not appear that this Court has ever decided whether it is libelous per se to write of a white woman that she is a Negro. The case of Scott v. Peebles, 2 Sm. & M. 546, did not decide that question. That was a suit for slander under our Actionable Words Statute, Section 1059, Miss. Code 1942. It is noted, in this connection, that generally to orally call a white person a Negro is not actionable per se, but it may be actionable in certain sections of the country under the social habits and customs prevailing in those sections. The question in Scott v. Peebles was whether the declaration brought the action within Section 1059, our Actionable Words Statute. The demurrer challenging that fact was over-ruled. In that case the defendant had said orally that the plaintiff had Negro blood. As stated, this was an action for slander and not for libel.

The general rule seems to be that to write of a white person that he or she is a Negro is libelous per se. The rule is stated in 53 C. J. S. 69, Par. 27, in these words: ''To publish of a white man that he is a Negro, or has Negro blood, is libelous per se; and, in some states, it is slanderous per se to make such a charge orally.''

In 33 Am. Jur. 76, Par. 56, it is said: ''According to the weight of authority, a charge that a white person is a Negro or Mulatto, or is tainted with Negro blood, is actionable per se.''

In an Annotation in 50 A. L. R. 1413, this language appears: ''The great weight of authority in the cases involving charges that the plaintiff is of African origin is that such an imputation is actionable per se.'' Such is the rule in South Carolina, Louisiana, Kentucky, Tennessee and Oklahoma, states whose social customs are very similar to those of the State of Mississippi. Flood v. News & Courier Company, 71 S. C. 112, 50 S. E. 637; Flood v. Evening Post Publishing Co., 50 S. E. 641; Spotorno v. Fourichon, 4 So. 71 (La.); Stultz v. Cousins, 242 Fed. 794, 155 C. C. A. 382 (Tenn.); Axton-Fisher Tobacco Company v. Evening Post Company, 145

Ky. 164, 183 S. W. 269; Hargrove v. The Oklahoma Press Publishing Co., 265 Pac. 635; Upton v. Times Democrat Publishing Co., 104 La. 141, 28 So. 970. In the Upton case a reporter for defendant-newspaper sent a telegram to the paper, giving an account of a meeting at which Upton presented a petition, and in which telegram the reporter to Upton as a "cultured" gentleman. In the transmission of the message the word "cultured" got changed to "colored". In that form it was received by the paper. The paper changed the word "colored" to "Negro", "for the reason that the latter word is always used by the paper as the proper word." Upton sued the paper. The court held this libelous per se and sustained a judgment for damages.

While the exact question has not been settled in this State, the general definition of libel per se was set out in Conroy v. Breland, 185 Miss. 787, 189 So. 814, in these words: ██ "At common law any written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community is actionable per se. Hodges v. Cunningham, 160 Miss. 576, 581, 135 So. 215; Wrought Iron Range Co. v. Boltz, 123 Miss. 550, 558, 86 So. 354; * * *." ██ That definition embraces the effect in this State of publishing that a white woman is a Negro. We therefore conclude that in this State to assert in print that a white woman is a Negro is libelous per se, which is the general rule as above shown.

██ It is next contended by the appellant that plaintiff made no proof of any specific money-damage which resulted to her from the publication of the article in question. It is true that none of the witnesses named any specific amount of money estimated by them to cover the damage. There was testimony that when the appellee received knowledge of the publication she was very much upset from a nervous standpoint and very

emotional as a result of the publication. However, if an article is libelous per se, no special damages are necessary to be alleged or proved. The law presumes damage per se from the writing of the libelous words. Daugherty v. Price Mercantile Co., 132 Miss. 39, 95 So. 790; Conroy v. Breland, supra; 33 Am. Jur. 30, Section 5; 35 C. J. S. 84, Par. 85. The rule is stated in 33 Am. Jur. 39, Par. 5, in these words: "In the case of words actionable per se, their injurious character is a fact of common notoriety, established by the general consent of men, and the court consequently takes judicial notice of it. They necessarily import damages, and therefore in such cases general damages need not be pleaded or proved, but are conclusively presumed to result; nor need special damage be shown in order to sustain the action." Prosser on Torts, p. 797. In Conroy v. Breland, supra, it was said "no special damages are necessary to be alleged or shown in order to prevail against a demurrer, or a motion to exclude."

This does not mean that the court will give to the jury unrestrained power to determine the amount of the damage. The court has, and will retain, supervisory power over the action of the jury in its determination of the money-damage. Interstate Company, et al. v. Garnett, 154 Miss. 325, 122 So. 373.

 In this connection there was no malicious intent on the part of appellant in the publication of this article. However, the article being libelous per se, such intent was not necessary to sustain the action. Rodgers v. Kline, 56 Miss. 808, Jarnigan v. Fleming, 43 Miss. 710; Upton v. Times Democrat Publishing Co., supra.

 After this suit was instituted, and on March 12, 1952, appellant printed in its paper an article giving account of the bringing of the suit the day before, in which appellant expressed regret that the error had been made by its reporter, and regret that the appellee had been caused any embarrassment because of such error. The

correction, though commendable, did not constitute a defense. The fact of the correction was a matter to be considered by the jury in mitigation of damages. Upton v. Times Democrat Publishing Co., supra.

Appellant next urges that the amount of the verdict is so excessive as to show bias and prejudice on the part of the jurors. We do not have any very definite yardstick by which to measure this question. It is shown that the plaintiff was a young married woman; that her family lived in Franklin County, Mississippi; that she had two boys, five years and sixteen months old respectively; that she was temporarily working at different cafes and restaurants in Natchez; that she made trips back to her husband who was in Franklin County; and it was furthermore shown that she was a woman of good repute in her home county, and the only reflection on her character is the inference which might be drawn from the fact that she was riding with two men under the circumstances here shown, neither of whom was her husband. It is further shown that some of her friends and acquaintances made remarks to her about this article and that she went through strong emotions as a result thereof. It is also shown that immediately thereafter she went back to her home and that she did not accept any further outside employment. In the Garnett case, supra, the jury returned a verdict for $25,000, and this Court reduced it to $15,000. However, the jury in the Garnett case was permitted to impose punitive damages. No such damages could be imposed under the facts of this case. Considering all of the elements involved in this case, we do not perceive on just what basis, and to what extent, we could reduce the amount of the damage. ▮▮▮ Ordinarily the amount of the damage is a question for the jury, and we are not justified in disturbing the finding of the jury unless we are convinced that the verdict was the result of prejudice and passion on the part of the jury. ▮▮▮ We

cannot say that is true in this case. The paper had an extensive circulation in Adams County and adjoining counties.

██ Counsel for appellee, when presenting the case to the jury, made certain remarks which appellant says should work a reversal and remand of this case. It is shown by a bill of exceptions that counsel for plaintiff in his argument to the jury said: "You know this woman has been damaged, because if she had not been damaged his Honor would not have let this case come to you, but would have ruled it out as a matter of law." Counsel for defendant objected to this language. The trial judge sustained the objection and instructed the jury to disregard the quoted remarks. Defendant then moved for a mistrial, which motion was overruled. The bill of exceptions then recites "Counsel for the plaintiff then stated in the presence of the jury—does counsel deny that is the law?" Counsel for defendant objected to that statement. The court sustained the objection and instructed the jury to disregard the remark; whereupon counsel for defendant moved for a mistrial, which was overruled. It is earnestly urged that the rule announced in Overing v. Skrmetta, et al., ............ Miss. ............, 67 So. 2d 606, works a reversal of this case. In that case counsel for plaintiff said: "That if this was not a case of liability the court would not have permitted it to be submitted to you." No objection was made by defendants, but the judge himself, without objection being made, said "That is not true. The question of liability is submitted on instructions given to the jury and it is for the jury to pass on"; whereupon counsel for plaintiff remarked "I withdraw the statement. The matter of liability, damages and all other matters are submitted for your determination." This Court set forth the contention of defendants, based upon the foregoing circumstances, in these words: "It is contended that the voluntary statement, in effect, meant that counsel was misrepresenting the court's action in the matter,

and, owing to the high esteem in which judges are held, this statement was highly prejudicial and likely caused the jury to consider the plaintiff's case as a fraudulent attempt to extort money from the defendants." This Court held that the quoted statement, made by plaintiff's counsel, was improper, but that the action of the trial judge was not error. The case is not applicable to the case at bar. While the remarks of counsel for plaintiff in this case were improper we do not think the refusal of the trial judge to grant a mistrial was error. It will be noted the statement had reference to damages. We have held that the publication was libelous per se and that in such case damage was presumed and did not need to be proved especially. We do not perceive that the jury was misled.

Appellant complains of the refusal of the trial court to grant him four specified instructions. In one the jurors were told they could not find more than nominal damages. Another informed the jurors that they could not find for the plaintiff unless malice was shown on the part of defendant in making said objection. Another instruction told the jurors that if the reporter for the paper had reasonable ground to believe from the police report that the plaintiff was a Negro they should find for the defendant. The fourth instruction told the jurors that if they believed that the mistake of the reporter was caused by the conduct of the plaintiff herself they should return a verdict for the defendant. The first three instructions are not based upon applicable legal principles as heretofore announced in this case. There is no proof to support the fourth instruction.

Appellant contends that instructions three and four granted appellee constitute reversible error. Instruction number three told the jury that in assessing damages it might take into consideration injury to the reputation of plaintiff, her exposure to ridicule, the lowering of the confidence of the community in her, if any,

which the plaintiff sustained as a result of said article. There is direct proof that some of her friends and acquaintances exhibited an attitude of ridicule and semi-criticism towards her but even without specific proof the specified elements in the instruction were properly considered by the jury in determining the amount of the damage. Conroy v. Breland, supra. ██ Instruction number four told the jury that if it believed from the preponderance of the evidence that Forman, the reporter, was the agent of the defendant in the publication of said article, and that its preparation and publication were within the scope of his authority, and if the jury further believed from the preponderance of the evidence that as a direct and proximate result of the publication of the article the plaintiff's reputation was injured or she was exposed to ridicule or degraded in society or lowered in the confidence of the community, it would be the duty of the jury to find for the plaintiff. The article being libelous per se, these were proper elements for the jury to consider, as a natural result of the publication of the article, in determining the amount of the damage. Conroy v. Breland, supra.

Affirmed.

*Lee, Holmes, Arrington* and *Ethridge, JJ.,* concur.