17258

MAUDIE BOWEN, Appellant, v. INDEPENDENT PUBLISHING COMPANY, Respondent

(96 S. E. (2d) 564)

510

*John M. Schofield, Esq.,* of Walhalla, *for Appellant,*

*Messrs. S. Eugene Haley* and *Hood & Hood,* of Anderson, *for Respondent,*

*John M. Schofield, Esq.,* of Walhalla, *for Appellant, in Reply.*

February 6, 1957.

E. H. HENDERSON, Acting Associate Justice.

Only one question is involved in this case. Is it libelous *per se* to publish in print of a white person that she is a Negro?

The defendant is the publisher of the Anderson Daily Mail, a newspaper of wide circulation. On March 11, 1954, the paper printed a statement, under the heading "Negro News" and under the picture of a colored soldier, that the son of the appellant had been transferred to a government hospital.

An action for libel was tried before Honorable James M. Brailsford, Jr., and a jury. The appellant testified that she is a white person, and that the statement was published about her son, naming her as his mother. The respondent offered no testimony. It moved for a directed verdict on the ground that there was no evidence of actual malice or of special damages, and that it is not actionable *per se* to publish of a white person that she is a Negro. The presiding judge directed a verdict in favor of the respondent, and the plaintiff has appealed.

Our earliest reported case on this subject is *Eden v. Legare,* 1 Bay 171, 1 S. C. L. 171, decided in 1791. It is in the very first volume of the law reports. It was there held that calling a white man a mulatto is actionable in itself.

In *Wood v. King,* 1 Nott & McC. 184, 10 S. C. L. 184, decided in 1818, the Court again held that to call a white person a mulatto is actionable *per se.*

In a case decided in 1821, *Atkinson v. Hartley,* 1 McC. 203, 12 S. C. L. 203, the Court said that it had frequently been decided that calling a white person a mulatto was actionable.

We come next to the case of *Flood v. News and Courier Company,* 71 S. C. 112, 50 S. E. 637, and its companion case of *Flood v. Evening Post Publishing Company,* 71 S. C. 122, 50 S. E. 641, decided in 1904. It was published that the plaintiff was colored. The defendant demurred to the

complaint on the ground that under the provisions of the thirteenth, fourteenth, and fifteenth amendments to the Constitution of the United States the use of the word "colored" applied to any one is not libelous or defamatory. The trial judge sustained the demurrer. On appeal to this Court, Chief Justice Pope wrote a vigorous opinion, holding that the Federal amendments in no way affected the social relations of the two races, nor made any change in the law of this State under which it is libelous to publish that a white person is colored.

The other three members of the Court, Justices Gary, Jones, and Woods, concurred "in the result, as the complaint alleges that the publication was willful and malicious". Judge Brailsford, in the present case, construed that to mean that the majority of the Court held that it is not actionable *per se* to publish of a white person that she is a Negro unless the publication is done wilfully and maliciously. We do not think that interpretation is the correct one. We do not understand that the three Justices held that the publication was not libelous *per se unless* done wilfully and maliciously. We believe that they decided that since the complaint expressly alleged that the publication was wilful and malicious, and for that reason was sufficient to call for the overruling of the demurrer, the Court would not consider other matters which were not necessary to a decision of the case.

Nowhere in the *Flood case* is it undertaken to overrule the earlier cases. Judge Brailsford says in his order that there is no question but that under the older decisions the law of the State was that it was actionable *per se* to publish of a white person that he is a Negro. That is correct; and we think that the long established rule is not changed by the Flood decision and is still the law of this State.

The earlier cases were decided at a time when slavery existed, and since then great changes have taken place in the legal and political status of the colored race. However, there is still to be considered the social distinction existing

between the races, since libel may be based upon social status.

In *Whitaker v. Sherbrook Distributing Company,* 189 S. C. 243, 200 S. E. 848, 849, the Court said: "The words must be of such character that a presumption of law will arise therefrom that the plaintiff has been degraded in the estimation of his friends or of the public, or has suffered some other loss either in his property, character, reputation or business or in his domestic or social relations."

█ Written words tending to diminish the respectability of the person to whom they relate are libelous and actionable. *Black v. State Company,* 93 S. C. 467, 77 S. E. 51.

█ " 'If a written or printed publication tends to degrade a person, that is, to reduce his character or reputation in the estimation of his friends or acquaintances, or the public,' " it is libelous *per se. Galloway v. Cox,* 172 S. C. 101, 172 S. E. 761, 762.

And at 53 C. J. S., Libel and Slander, § 13, p. 57, it is said that words written or printed may be libelous and actionable *per se* if they "induce an evil opinion of him in the minds of right thinking persons, and deprive him of their friendly intercourse and society." And, at page 58: "As otherwise stated, words published are libelous if they discredit plaintiff in the minds of any considerable and respectable class in the community, taking into consideration the emotions, prejudices, and intolerance of mankind".

Although to publish in a newspaper of a white woman that she is a Negro imputes no mental, moral or physical fault for which she may justly be held accountable to public opinion, yet in view of the social habits and customs deeprooted in this State, such publication is calculated to affect her standing in society and to injure her in the estimation of her friends and acquantances.

That such a publication is libelous *per se* is supported by the very great weight of authority.

At 53 C. J. S., Libel and Slander, § 27, p. 69, we find that "to publish of a white man that he is a Negro, that he has Negro blood, or that he is colored is libelous *per se*."

It is stated at 33 Amer. Juris., 76, that "according to the weight of authority a charge that a white person is a Negro or mulatto, or is tainted with Negro blood, is actionable *per se*."

We read, at 50 A. L. R. 1413, that "the great weight of authority in the cases involving charges that the plaintiff is of African origin is that such an imputation is actionable *per se*."

In the recent case of *Natchez Times Publishing Company v. Dunigan,* 221 Miss. 320, 72 So. (2d) 681, 684, it is said that "the general rule seems to be that to write of a white person that he or she is a Negro is libelous *per se*."

Among other cases to the same effect may be cited *Upton v. Times-Democrat Publishing Company,* 104 La. 141, 28 So. 970; *Hargrove v. Oklahoma Press Publishing Company,* 130 Okl. 76, 265 P. 635; *Stultz v. Cousins,* 6 Cir., 242 F. 794, 155 C. C. A. 382; *Spotorno v. Fourichon,* 40 La. Ann. 423, 4 So. 71; *Morris v. State,* 109 Ark. 530, 160 S. W. 387; *Spencer v. Looney,* 116 Va. 767, 82 S. E. 745; and *Mopsikov v. Cook,* 122 Va. 579, 95 S. E. 426.

We think that the case should have been submitted to the jury, and that there should be a new trial. Accordingly, the judgment of the circuit court is reversed.

STUKES, C. J., and TAYLOR, OXNER and Moss, JJ., concur.