**James ALBRIGHT and Amrak Productions, Inc., Plaintiffs,**

v.

**Andrew MORTON, Michael O'Mara, Michael O'Mara Books Limited, St. Martin's Press, Time, Inc. and Newsgroup Newspapers, Ltd., Defendants.**

No. C.A.02–11458–NG.

United States District Court, D. Massachusetts.

May 28, 2004.

Jerrold G. Neeff, The Bostonian Law Group, Boston, MA, for Amrak Productions, Inc., James Albright, Plaintiffs.

Jonathan M. Albano, Bingham, McCutchen LLP, Boston, MA, for Michael O'Mara Books Limited, Andrew Morton, Michael O'Mara, St. Martin's Press, Inc., Time, Inc., Defendants.

Aaron M. Wais, Bingham & McCutchen LLP, Boston, MA, for St. Martin's Press, Inc., Time, Inc., Defendants.

### MEMORANDUM AND ORDER

GERTNER, District Judge.

## I. INTRODUCTION

` This is a diversity action for defamation arising out of the publication of a book by defendants. The book allegedly portrayed plaintiff James Albright ("Albright") as a homosexual by mis-captioning a photograph of a gay individual with Albright's name. To find that the photograph makes any kind of statement regarding Albright's sexuality requires the Court to pile inference upon innuendo, innuendo upon stereotype. And even if the Court were to do so, plaintiffs' argument would still fail. In 2004, a statement implying that an individual is a homosexual is hardly capable of a defamatory meaning.

Plaintiffs are James Albright, who served as Madonna's bodyguard and also had a personal relationship with the singer, and Amrak Productions, Inc. ("Amrak"), who employed Albright as a bodyguard. Plaintiffs assert claims against all defendants for defamation (Counts I–VI), violations of Mass. Gen. Laws c. 214 § 3A (Count VII), invasion of privacy (Count

VIII), negligence (Count IX), negligent infliction of emotional distress (Count XII), and intentional infliction of emotional distress (Count XIII). Plaintiffs also assert claims for violation of Mass. Gen. Laws c. 93A against Michael O'Mara Books Limited ("MOM"), St. Martin's Press, Inc. ("St.Martin's"), and Newsgroup Newspapers, Ltd ("News Group") (Count XI).

This Court may well be the first to have the opportunity to assess plaintiffs' claims in the light of recent decisions giving legal force to homosexuals' ongoing quest for equal rights. In this day and age, recent rulings by the Supreme Court and the Supreme Judicial Court of Massachusetts, undermine any suggestion that a statement implying that an individual is a homosexual is defamatory. In fact, a finding that such a statement is defamatory requires this Court to legitimize the prejudice and bigotry that for too long have plagued the homosexual community.

Defendants Andrew Morton ("Morton"), MOM, and Michael O'Mara ("O'Mara") have moved this Court to dismiss all claims against them [docket # 10]. For the reasons stated below, defendants' motion to dismiss is **GRANTED**. The remaining defendants have jointly moved with plaintiffs to voluntarily dismiss the counts against them [docket entry # 26]. For the same reasons articulated below, this motion is also **GRANTED**.

## II. *FACTS*

The facts according to plaintiffs' Complaint are as follows:

Plaintiff Amrak Productions, Inc ("Amrak") employed Albright as a professional bodyguard. Albright has been involved in the personal and professional security business for over ten years. From January to July of 1992, Albright served as a bodyguard to the singer Madonna. Between sometime in 1992 and sometime in 1994, Albright and Madonna became romantically involved.

In December 2000, MOM approached Amrak to discuss Albright's participation in MOM's biography of Madonna. MOM subsequently purchased from Albright the rights to certain information regarding Madonna. MOM then sold the information purchased from Albright to St. Martin's, who later published it in the book entitled *Madonna* (hereinafter "the Book"). The Book was released in the United States on or about November 6, 2001, and thereafter, distributed abroad.

According to the Complaint, the Book contains a photograph of Jose Guitierez ("Guitierez"), a former employee of Madonna's, walking with her. The caption underneath the photograph incorrectly states "Jim Albright (with Madonna in 1993) told Morton he felt 'overwhelming love' for her."[1]

According to plaintiffs' Complaint, Guitierez is an outspoken homosexual and "clearly represents his homosexual ideology in what many would refer to as sometimes graphic and offensive detail." Guitierez appeared in the television documentary of Madonna's life entitled *Truth or Dare* and also appeared with Madon-

1. The Complaint quotes this language from the photograph's caption. This caption appeared with the photograph published in "People Weekly," which also ran an article excerpting the Book. However, in the copy of the Book submitted to the Court by defendants, the caption reads:

Madonna attends ex-lover Prince's concert with her secret lover and one-time bodyguard Jimmy Albright (*left*). Albright, who bears an uncanny resemblance to Carlos Leon, the father of Madonna's daughter, enjoyed a stormy three-year relationship with the star. They planned to marry, and had even chosen names for their children.

na on two worldwide tours. Plaintiffs allege that during Guitierez's appearances with Madonna, he often appeared on stage dressed as a woman and engaged in acts on stage that "some would find homosexual, sexually graphic, lewd, lascivious, offensive, and possibly illegal."

On or about November 12, 2001, defendant Time, Inc. published the same photograph included in the Book in its publication "People Weekly," along with an article excerpting the Book. "People Weekly" is distributed internationally. The publication also falsely identified Albright as the man in the photograph. On or about March 17, 2002, defendant Newsgroup published the photograph with the erroneous caption in its publication "News of the World." "News of the World" is distributed internationally.[2]

Plaintiffs only challenge the caption allegedly imputing homosexuality to Albright. They do not object to any other information in the publications, including personal information about Albright's affair with Madonna—their sexual encounters, their marriage plans, and Albright's affair with a "girl at a club" that ended their relationship.

## III. DISCUSSION

### A. Standard for Motion to Dismiss

In adjudicating a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept all allegations in the complaint as true and all reasonable inferences must be drawn in favor of the plaintiffs. See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir.1994). The complaint should be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### B. Defamation Claims

■ To maintain an action for defamation of a non-public figure, a plaintiff must allege facts to show that (1) a defendant made a false statement "of and concerning" the plaintiff; (2) the statement could damage the plaintiff's reputation in the community; (3) the defendant was at fault in making the statement; and (4) the statement caused economic harm or is actionable without proof of economic loss. See Ravnikar v. Bogojavlensky, 438 Mass. 627, 629–30, 782 N.E.2d 508 (2003); Reilly v. Associated Press & Others, 59 Mass. App.Ct. 764, 769, 797 N.E.2d 1204 (2003), cert denied, 441 Mass. 1103, 803 N.E.2d 333 (2004).

■ The parties have focused on the second factor—whether the statement could damage Albright's reputation in the community. This involves two types of statements: In the first category are statements that are defamatory on their face, known as defamatory per se, and as to which the plaintiff need not prove damages;[3] damages are presumed to flow from the statements themselves. In the

---

**2.** Defendants have submitted a copy of the Book and the "People Weekly" magazine article for the Court's consideration. This Court can consider these materials because they are essential to plaintiffs' complaint. See Fudge v. Penthouse International, Ltd., 840 F.2d 1012 (1988) (finding proper district court's consideration of article in motion to dismiss libel action even though article was submitted by defendant and not attached to the complaint).

**3.** Massachusetts recognizes four types of statements as defamatory per se: statements that constitute libel; statements that charge the plaintiff with a crime; statements that allege that the plaintiff has a certain disease and statements that may prejudice the plaintiff's profession or business. See Ravnikar, 438 Mass. at 630, 782 N.E.2d 508. If a statement comes within one of these four exceptions, the plaintiff may recover noneconomic losses, such as emotional injury and

second category are statements allegedly capable of communicating a defamatory idea when certain extrinsic facts are known or when the words are given meaning not ordinarily attributed to them. Fowler V. Harper & Fleming James, Jr. & Oscar S. Gray, *The Law of Torts* § 5.9 (2d ed.1986). While their papers are not always clear, plaintiffs seem to be alleging both sorts of defamation. In either case, their claim founders.

■ The threshold question—whether the statement is susceptible to a defamatory meaning in either case—is a question of law for the Court. *See Foley v. Lowell Sun Publ'n Co.*, 404 Mass. 9, 10, 533 N.E.2d 196 (1989).

> Words may be libelous unless they cannot reasonably be understood in a defamatory sense, or, to express in another way, unless they are incapable of a defamatory meaning. The test is whether, in the circumstances, the writing discredits the plaintiff in the minds of any considerable and respectable class of the community.

*Smith v. Suburban Rest., Inc.*, 374 Mass. 528, 529, 373 N.E.2d 215 (1978) (quoting *Muchnick v. Post Publ'g Co.*, 332 Mass. 304, 305–06, 125 N.E.2d 137 (1955)); *see also King v. Globe Newspaper Co.*, 400 Mass. 705, 718, 512 N.E.2d 241 (1987). Only if a publication is susceptible to both a defamatory and non-defamatory meaning does it present a question of fact for a jury. *King*, 400 Mass. at 718, 512 N.E.2d 241. The "statement" alleged here does not present an issue of fact for the jury.

1. ***Does the Photograph and Caption State that Albright is a Homosexual?***

■ What statement, if any, is made by the photograph and its caption? [4] In as-

sessing whether the statement is capable of a defamatory meaning, the Court must "examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not just merely a particular phrase or sentence." *Myers v. Boston Magazine Co.*, 380 Mass. 336, 341–42, 403 N.E.2d 376 (1980)(quoting *Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir.1980)). "Statements alleged to be libelous must be interpreted reasonably." *King*, 400 Mass. at 711–12, 512 N.E.2d 241.

■ The photograph portrays Madonna walking in between two men. The man misidentified as Albright, Guitierez, stands to her right, dressed in black pants, a black and white shirt, black leather jacket, tinted glasses, a string necklace with a pendant, and an earring. Nothing in the photograph suggests that he is gay. Plaintiffs' claim is that readers will ascribe homosexuality to Guitierez because of his outside activities and then identify Albright as Guitierez because of the photograph's caption.

Plaintiffs' claim is illogical. To conclude that that message will be conveyed requires the following inferential leaps: that the "community" (1) was sufficiently aware of Madonna and her circle to know that the man in the photograph was gay, even though nothing in the photograph communicates that fact; (2) that the same community was not aware enough to know that the man was Guitierez, not Albright.

In any event, even if the Court were to assume that the community was familiar with the sexual preference of Guitierez,

---

damage to reputation. An undamaged plaintiff may recover nominal damages. *Id.*

**4.** Plaintiffs have not made any argument that the photograph at issue, without the printed caption, makes any independent statement.

but, at the same time, did not know that the individual portrayed was Guitierez, not Albright, the context in which the photograph appears, namely a book or article that details Madonna's relationship with Albright, would immediately suggest otherwise. *See Myers*, 380 Mass. at 341–42, 403 N.E.2d 376. The Book dedicates an entire chapter to the Madonna–Albright affair. The author describes their sexual encounters, their desire to marry, the names they picked for their children, Albright's ex-girlfriend, the "fling" that Albright had with a "girl at a club" that ended his relationship with Madonna, and various other details that shed light on Albright's heterosexuality.

Indeed, quite apart from the book, the photograph's caption itself portrays Albright as a heterosexual. The caption in "People Weekly" states that Albright felt "overwhelming love" for Madonna.[5] The caption in the Book is even more explicit— that Albright was Madonna's "secret lover," that the two had a "stormy three-year relationship," that they "planned to marry," and that they had "chosen names for their children." In the context of the chapter and the caption itself, it is inconceivable that the audience would assume that Albright was gay.

Therefore, I reject plaintiffs' interpretation of the mislabeled photograph as "unreasonably strained." *King*, 400 Mass. at 711–12, 512 N.E.2d 241.[6] No reasonable view of the photograph and text would suggest that Albright is gay. It, therefore, cannot be construed as defamatory at all.

## 2. Is a Statement That an Individual is a Homosexual Capable of a Defamatory Meaning?

 Even if I were to find that the photograph and caption somehow state or imply that Albright is a homosexual, I could not find that such a statement is capable of a defamatory meaning. Looking at any "considerable and respectable class of the community" in this day and age, I cannot conclude that identifying someone as a homosexual discredits him, that the statement fits within the category of defamation per se. *See Smith*, 374 Mass. at 529, 373 N.E.2d 215.

While courts outside this jurisdiction are split on whether a statement wrongfully identifying someone as homosexual is defamatory per se, their decisions rely on statutes criminalizing same sex sexual acts (statutes which may well be unconstitutional), and fail to incorporate more recent decisions recognizing homosexuals' equal rights.[7]

5. The article in "People Weekly" contains similar details regarding the couple, Albright's past girlfriend, and the fling Albright had that eventually ended his relationship with Madonna.

6. While the existence of a defamatory innuendo is a question of fact for a jury to consider, *Reilly*, 59 Mass.App.Ct. at 775, 797 N.E.2d 1204, plaintiffs' proposed interpretation of the photograph is too strained to even constitute a reasonable innuendo.

7. *See Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 311 (5th Cir.1997) (finding remark that plaintiff was a "faggot" was slander per se under Texas law because imputed crime of

sodomy); *Miles v. Nat'l Enquirer, Inc.*, 38 F.Supp.2d 1226, 1228–29 (D.Colo.1999) (holding "merely accusing one of being a homosexual is not defamatory per se," but accusation of pedophile and sex offender raised statement to defamatory per se), *Murphy v. Pizarrio*, 1995 WL 565990, *3 (S.D.N.Y.1995) (finding published statement imputing homosexuality to another is defamatory per se under New York law); *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 312 (Mo.1993) (finding false allegation of homosexuality defamatory because homosexuality still viewed with disfavor, deviant sexual intercourse is misdemeanor in Missouri, and allegation imputes unchastity); *Donovan v. Fiumara*, 114

First, the large majority of the courts that have found an accusation of homosexuality to be defamatory per se emphasized the fact that such a statement imputed criminal conduct. *See Plumley*, 122 F.3d 308; *Nazeri*, 860 S.W.2d 303; *Head*, 596 S.W.2d 209. This rationale is extinguished by the Supreme Court's recent ruling in *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), finding a Texas statute criminalizing same sex sexual conduct unconstitutional under the Due Process Clause because individuals have a right to privacy to engage in sexual acts in their homes. The Supreme Court overruled *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), and concluded that continuing that precedent "demeans the lives of homosexual persons." *Lawrence*, 123 S.Ct. at 2482. Continuing to characterize the identification of someone as a homosexual defamation *per se* has the same effect.

Plaintiffs argue that sodomy is still considered a violation of Mass. Gen. Laws c. 272 § 35,[8] criminalizing unnatural and lascivious acts. The statute, however, is inapplicable to private, consensual, conduct between adults. *See Commonwealth v. Balthazar*, 366 Mass. 298, 302, 318 N.E.2d 478 (1974). Nor does an accusation of homosexuality necessarily implicate the act of sodomy. *See Donovan* 442 S.E.2d at 575–76.

Second, I reject the offensive implication of plaintiffs' argument that, even without the implicit accusation of a crime, portions of the community "feel [homosexuals] are less reputable than heterosexuals," as plaintiffs allege in this Complaint. Plaintiffs cite various state statutes to illustrate societal contempt for homosexuals, including legislation against gay marriage and court decisions specifically denying same-sex marriage. Defendants counter with examples of Massachusetts statutes prohibiting discrimination on the basis of sexual orientation. *See, e.g.*, Mass. Gen. Laws c. 151B § 4 (outlawing sexual orientation discrimination in employment, housing, credit, and services); Mass. Gen. Law. c. 265 § 39 (providing penalties for hate crimes based on sexual orientation).

Plaintiffs' arguments are especially unavailing in light of the Supreme Judicial Court's recent decision in *Goodridge v. Department of Public Health*, 440 Mass. 309, 798 N.E.2d 941 (2003), finding limitations on same sex couples' ability to marry unconstitutional. *See also In Re Opinions of the Justices to the Senate*, 440 Mass.

N.C.App. 524, 442 S.E.2d 572, 575–76 (1994) (holding reference to plaintiff as "gay" or "bisexual" was not slander per se; statement did not allege plaintiff had "loathsome disease" or impute commission of crime); *Boehm v. American Bankers Ins. Group, Inc.*, 557 So.2d 91, 94–95 (Fla. 3d DCA 1990) (statement by employer implying that employee was homosexual did not show malice (or slander per se) to overcome employer's claim of privilege); *Head v. Newton*, 596 S.W.2d 209 (Tex.Civ.App.1980) (finding plaintiff made prima facie showing of slander sufficient to maintain venue where defendant stated she believed plaintiff was homosexual or "queer" because statement imputed crime of sodomy); *Schomer v. Smidt*, 113 Cal.App.3d 828, 170 Cal.Rptr. 662, (1980)(finding false imputation of homosexual act slander per se because equaled accusation of unchastity where defendant's alleged sexual activity was between unmarried individuals); *Moricoli v. Schwartz*, 46 Ill.App.3d 481, 5 Ill.Dec. 74, 361 N.E.2d 74, 76 (1977)("fag" was not slander per se but was basis for defamation action).

8. M.G.L. c. 272 § 35 states:

Whoever commits any unnatural and lascivious act with another person shall be punished by a fine of not less than one hundred nor more than one thousand dollars or by imprisonment in the state prison for not more than five years or in jail or the house of correction for not more than two and one half years.

1201, 802 N.E.2d 565 (2004).[9] The Court recognized that "[m]any people hold deep-seated religious, moral, and ethical convictions that ... homosexual conduct is immoral." *Goodridge*, 440 Mass. at 312, 798 N.E.2d 941. However, the Court emphasized "[t]he Constitution cannot control such prejudices but neither can it tolerate them. Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect." *See Goodridge*, 440 Mass. at 341–42, 798 N.E.2d 941 (quoting *Palmore v. Sidoti*, 466 U.S. 429, 433, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984)(construing Fourteenth Amendment)). In its subsequent advisory opinion, the Court went on to state that it would not allow homosexual couples to endure "second-class" status, finding that the differences between the terms "civil marriage" and "civil union" were not innocuous but rather intended to relegate same-sex couples to lesser status. 802 N.E.2d at 570.

While the Court's language acknowledges that a segment of the community views homosexuals as immoral, it also concludes that courts should not, directly or indirectly, give effect to these prejudices. If this Court were to agree that calling someone a homosexual is defamatory per se—it would, in effect, validate that sentiment and legitimize relegating homosexuals to second-class status.

Perhaps the best way to understand the inappropriateness of plaintiffs' position is to put it in two very different contexts. First, I will compare it to statements falsely linking a plaintiff to racial, ethnic or religious groups, which plainly would not qualify as defamation per se today. Second, I will compare it to false statements linking a plaintiff to groups that have always been considered defamatory.

Thus, if Albright claimed that he was a white person wrongfully labeled African-American, the statement would not be defamation per se, even if segments of the community still held profoundly racist attitudes. In the 1900's, such statements were regularly deemed defamatory in a number of decisions that seem anachronistic, if not offensive, to modern eyes.[10] For example, in *Bowen v. Independent Publishing Company*, 230 S.C. 509, 96 S.E.2d 564 (1957), the Supreme Court of South Carolina found that it was libelous per se to include a white person's name in connection with a news item under the heading "Negro News," because of the continued existence of social prejudice against African Americans. Citing cases stretching back to 1791, the Court concluded that neither the abolition of slavery, nor changes in the "legal and political status of the colored race" warranted a departure from South Carolina precedent. *Id.* at 565. What the Court was doing, in effect, as one commentator noted, was "assuming without question that the plaintiff's community was a 'considerable and respectable' one whose values are worthy of the law's attention, respect, and support," and in doing so, "validate[d] racist views." Lyrissa Barnett Lidsky, *Defamation, Reputation, and the Myth of Community*, 71 Wash. L.Rev. 1, 30 (January 1996). Recent opinions expressly reject the premises of the earlier law. *See Thomason v.*

---

9. While this decision was issued in 2004, and the Book was published in 2001, it represents the culmination of decisional and statutory law that have been evolving in that direction for some time. The principles it encloses flow from earlier decisions and enactments.

10. *See, e.g., Stultz v. Cousins*, 242 F. 794 (6th Cir.1917); *Morris v. State*, 109 Ark. 530, 160 S.W. 387 (1913); *Jones v. R.L. Polk & Co.*, 190 Ala. 243, 67 So. 577 (1915); *May v. Shreveport Traction Co.*, 127 La. 420, 53 So. 671 (1910); *Mopsikov v. Cook*, 122 Va. 579, 95 S.E. 426 (1918); *Spencer v. Looney*, 116 Va. 767, 82 S.E. 745 (1914).

*Times–Journal, Inc.,* 190 Ga.App. 601, 379 S.E.2d 551 (1989)(refusing to concede that plaintiff may have suffered from social prejudice of others where plaintiff sued over the publication of a false obituary that gave a funeral home listing that catered to a primarily "black clientel [sic]").

What has not changed in the case law is the conclusion that the category "defamation per se" should be reserved for statements linking an individual to the category of persons "deserving of social approbation" like a "thief, murderer, prostitute, etc." *See Hayes v. Smith,* 832 P.2d 1022, 1025 (Colo.Ct.App.1991).[11] To suggest that homosexuals should be put into this classification is nothing short of outrageous.

Finally, plaintiffs briefly argue that Albright suffered damage to his business, either suggesting a form of defamation per se or implying that the statement is defamatory because of his particular situation. That allegation does not advance the argument. Albright has not alleged that he lost any specific professional opportunities because of the statements made, nor received any professional criticisms. Without some specific claim of actual harm, he is doing nothing more than trading in the same kinds of stereotypes that recent case law and good sense disparage.[12]

## C. *Amrak's Libel Claim*

█ Plaintiff Amrak asserts a cause of action for libel in addition to Albright, claiming its business' goodwill interest was harmed by the alleged defamatory statements regarding Albright. As the Court has found that the statement does not provide a basis for a defamation claim, this claim fails as well. In addition, "one who is not himself libeled cannot recover even though he has been injured by the libel published concerning another." *Gilbert Shoe Co. v. Rumpf Pub. Co.,* 112 F.Supp. 228, 229 (D.Mass.1953); *see also Eyal v. Helen Broad. Corp.,* 411 Mass. 426, 433, 583 N.E.2d 228 (1991).

## D. *Derivative Claims*

### 1. *Commercial Use*

█ Mass. Gen. Laws c. 214 § 3A provides, *inter alia,* that "[a]ny person whose name, portrait or picture is used within the commonwealth for advertising purposes or for the purposes of trade without his written consent ... may recover damages for any injuries sustained by reason of such use." The statute protects an individual's interest in preventing "the commercial value of one's name, portrait, or picture appropriated [for] the benefit of another." *Tropeano v. Atlantic Monthly Co.,* 379 Mass. 745, 749, 400 N.E.2d 847 (1980). However, the value of one's name or picture "is not appropriated 'when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for pur-

---

**11.** As the court in *Hayes* said: "A court should not classify homosexuals with those miscreants who have engaged in actions that deserve the reprobation and scorn which is implicitly a part of the slander/libel per se classification." 832 P.2d at 1025. The *Hayes* court concluded that the only way to warrant a per se classification is if that classification should "without equivocation, expose the plaintiff to public hatred or contempt." *Id.* It found that the record in 1991 in Colorado was mixed. It is not remotely mixed in 2004.

**12.** In other situations, such an argument may be appropriate. For instance, if an individual was in a business that forbade participation by homosexual individuals, such as the military or the clergy, such an allegation could immediately affect their livelihood. The personal security profession, however, is not such a business.

poses of publicity.'" *Id.* at 749, 400 N.E.2d 847 (quoting Restatement (Second) of Torts § 652(c), comment d (1977)). "'The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness'". *Id.* (quoting *Nelson v. Maine Times,* 373 A.2d 1221 (Me.1977)); *Tropeano,* 379 Mass. at 749, 400 N.E.2d 847 (dismissing commercial use claim because plaintiff's photograph was published as part of commentary, not as means of soliciting sales or in association with an advertisement).

Albright asserts that defendants profited directly from the use of his name in connection with the picture because it helped sell books and get publicity for the Book in various magazines and news articles. Albright's argument falls squarely under the example of a newspaper that seeks to make a profit but merely incidentally uses a plaintiff's name or likeness. *See id.; Morrell v. Forbes, Inc.,* 603 F.Supp. 1305 (D.Mass.1985)(finding publication of plaintiff's photograph in connection with magazine's story on organized crime did not constitute appropriation for advertising or commercial purposes); *Kleinerman v. Hodge,* 1996 WL 1186891 (Mass.Super.1996)(finding incidental use where newspaper published plaintiff's photograph in connection with article printed for the general interest it would evoke). Albright relies on the fact that he was paid for his story to show its commercial value, but this fact does not transform the use into the type of advertising use that the statute prevents.

### 2. *False Light Invasion of Privacy*

Albright also asserts a claim for putting him in a "false light," a species of invasion of privacy. The tort of false light

is not recognized in Massachusetts. *See ELM Medical Lab., Inc. v. RKO General, Inc.,* 403 Mass. 779, 787, 532 N.E.2d 675 (1989) *abrogated on sep. grounds in United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 551 N.E.2d 20 (1990). Plaintiffs ask this Court to recognize the cause of action in this case because public policy dictates that plaintiffs should be able to recover when false information is widely published. This case does not warrant that expansion.

Mass. Gen. Laws c. 214 § 1B does provide a cause of action for invasion of privacy. The statute provides "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." The statute has been interpreted to prevent the revelation of an individual's private information. *See Tower v. Hirschhorn,* 397 Mass. 581, 586–87, 492 N.E.2d 728 (1986)(disclosure without patients' consent of confidential medical information would be sufficient to warrant finding of invasion of privacy); *Bratt v. Int'l Business Mach. Corp.,* 392 Mass. 508, 467 N.E.2d 126 (1984)(disclosure of private information regarding employees could constitute invasion of privacy). However, Albright's claim sounds in defamation, not invasion of privacy, because he objects to the making of a *false* statement, not the revelation of private information. *See Riley v. Harr,* 292 F.3d 282, 298 (1st Cir.2002)(analyzing claim for disclosure of private fact under New Hampshire law and finding that court must assume fact is *true,* otherwise it would not amount to disclosure of a fact). To the extent that the Book reveals substantial private information regarding Albright's personal relationships, there is no issue. Albright voluntarily sold that information. What Albright is objecting to is the one photograph that allegedly falsely implies that he is gay. Albright's arguments un-

der this claim clearly refer to his defamation claim, which I have already found insufficient.[13]

### 3. *Emotional Distress*

■ To maintain a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, (2) the defendant's conduct was extreme and outrageous, (3) the actions of the defendant were the cause of plaintiff's distress, and (4) the emotional distress suffered by plaintiff was severe. *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144–45, 355 N.E.2d 315 (1976). Without a claim for defamation, Albright clearly has not alleged conduct that was " 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community.' " *Id.*

■ In order to state a claim for negligent infliction of emotional distress, the plaintiff must allege (1) negligence; (2) emotional distress; (3) causation; (4) harm manifested by objective symptomology; and (5) that a reasonable person would have suffered emotional distress under the circumstances. *Sullivan v. Boston Gas Co.*, 414 Mass. 129, 605 N.E.2d 805 (1993). Without a viable defamation claim, it would be difficult to find that a reasonable person would have suffered emotional distress under the circumstances. In addition, Albright has not alleged any "objective symptomology" to support his emotional distress claim; he merely asserts that defendants' actions "caused Plaintiff harm without limitation severe emotional distress." Therefore, Albright's emotional distress claim must fail.

### 4. *Negligence*

If the publication of the photograph and caption were ultimately found to be defamatory, plaintiffs could assert a claim for negligence on the basis that a "reasonably prudent editor would have realized the 'substantial danger to reputation' that the treatment of the photograph would have posed to the plaintiff." *Morrell*, 603 F.Supp. at 1307. However, plaintiffs have failed to state a claim for defamation. Plaintiffs argue that defendants can still be found negligent for the incorrect use of Albright's name and the resulting emotional distress even without a defamation claim. However, plaintiffs fail to articulate the duty defendants owed to them. Thus, this claim also fails.

### 5. *Chapter 93A*

■ Mass. Gen. Laws c. 93A § 2(a) makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." In order to prevail on a Chapter 93A claim, plaintiffs must show that defendants' actions: "(1) fall within 'the penumbra of some common-law statutory, or other established concept of unfairness'; (2)[are] 'immoral, unethical, oppressive, or unscrupulous'; and (3) 'caused substantial injury' " *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 15 (1st Cir. 1999).

■ Defendants argue that plaintiffs' 93A claim fails because Albright was not in trade or commerce with the defendants. Albright contends that a commercial relationship did exist because the parties engaged in a business transaction whereby defendants purchased Albright's story. Even if this Court finds that the parties

---

**13.** Defendants claim that Albright also asserts a cause of action for intrusion. This action is not clearly stated in the complaint and plaintiffs do not address it in their opposition to defendants' motion to dismiss.

were engaged in commerce, plaintiffs' 93A claim fails because "where allegedly defamatory statements do not support a cause of action for defamation, they also do not support a cause of action under G.L. c. 93A." *Dulgarian v. Stone,* 420 Mass. 843, 853, 652 N.E.2d 603 (1995).

## IV. *CONCLUSION*

For the foregoing reasons, defendants' motion to dismiss is hereby **GRANTED.**

**SO ORDERED.**