No. 16,547.

Lininger *v.* Knight.

(226 P. [2d] 809)

Decided January 15, 1951.

Mr. George J. Robinson, Mr. George G. Priest, for plaintiff in error.

Mr. A. E. SMALL, JR., for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

CHARLOTTE KNIGHT, individually and doing business as Overbrook Knight Klub, defendant in error, as plaintiff, filed her complaint in libel against Lininger. The parties will be referred to as plaintiff and defendant, and the defamatory article as set out in the complaint, will be designated as the petition. Trial to a jury was had on the issues as made by the complaint and answer, resulting in a verdict in plaintiff's favor in the sum of $10,500.

In substance, the allegations of the complaint were that, plaintiff was the owner and operator of the Overbrook Knight Klub in Jefferson county, with a liquor license; that on or about July 1, 1948, defendant instigated, prepared and circulated the following petition:

"Board of County Commissioners,
Jefferson County, Colorado.

"Gentlemen:

"This petition of the home owners in Genesee Gulch, respectfully requests that the license of the Overbrook Knight club, in Genesee Gulch, be cancelled. This is purely a residential community and we would like to keep it that way.

"Overbrook Knight club is a hide-out for people who want to drink and carry on in a manner objectionable to the established morals of this community. We, therefore, look to you to keep our mountain area clean. We formally request that the license for this nuisance be cancelled forthwith.

"Respectfully yours,
Gilbert I. Lininger,
A. Haanstadt,

Lou J. Putnam,
Coval W. Diehl,
J. P. Mather,
Wm. R. Shaw,
Wayne E. Shroyer,
A. M. Boyd,
B. F. Kennedy,
Clem W. Collins,
Harry W. Bundy,
Lila J. Thiede,
G. W. Parnell."

That defendant maliciously instigated, prepared and circulated said petition; that same was false and seriously affected plaintiff's business, reputation, health and peace of mind to her damage in the sum of $15,000; and that the petition is libelous, containing false, scandalous, defamatory, injurious and highly prejudicial statements of, and concerning, plaintiff and her business.

Defendant answered, denying instigation of the petition as alleged, but admitted he prepared and signed the same and presented the petition to, and left it with, the board of county commissioners of Jefferson county, requesting the cancellation of the liquor license issued by the board for the club and denying all other allegations in the complaint. For a second defense, defendant alleged that access to his property was reached by passing the Overbrook Knight Klub, and that the petition was presented to the board of county commissioners as the liquor licensing authority, seeking a revocation of the liquor license and that the petition constituted a qualified, privileged communication and was not activated by malice. Plaintiff replied, denying the communication was of a privileged nature and reasserted malice in the publication thereof.

It appears from the evidence and plaintiff's exhibit C, that immediately after the filing of the petition with the board of county commissioners, the editor of the Jefferson County Republican obtained incorrect information

from poorly prepared minutes of the meeting of said board, and from such information, in the July 7th issue of the Jefferson County Republican, published the following news item, "Gilbert I. Lininger was granted a hard liquor license for his Overbrook Knight Klub in Genesee Gulch."

The attention of the editor was called to the error thus made and in attempting to obtain and print a true statement, he again went over the minutes of the board of county commissioners, and talked to defendant. From his testimony it is not clear whether he requested defendant to bring him the original petition or copy, or not, because he stated that he was not sure. However, defendant positively testified that on and at the request of the editor, in attempting to publish the true story, defendant went to the offices of the county commissioners and asked for a copy of the petition and was not sure whether he was furnished the original or a copy, but, whichever it was, he took it to the office of Mr. Hansen, the editor, and left it there.

Mr. Hansen, the editor, stated that on the following Monday, he was checking the court house records, and a Mrs. Foley, in the office of the clerk of the district court, called his attention to the error, and he immediately made an investigation of the exact situation and upon reading the minutes of the board of county commissioners, found that they were not clear, but ambiguous and subject to double interpretation and he felt that Dr. Lininger had been wronged. Part of his testimony concerning the situation is as follows: "Q. Let us start this way, Mr. Hansen: How did you happen to print that? Can you give us the full story now? A. Yes. Q. How you happened to print that? A. Because, the way the County Commissioners' minutes originally were drawn up they were quite ambiguous and subject to double interpretation. I pulled a bonehead by picturing Dr. Lininger as the person who had applied for a liquor license at the Overbrook Knight Klub, and naturally I

was embarrassed and chagrined. When I heard of my mistake I was ready to make amends and run a correct story. Q. Did you print anything with regard to your thought that Dr. Lininger had applied for a liquor license? A. I printed a correction in the lead part of this story."

Thereafter, an article of retraction containing the petition in full appeared in the July 14th issue of the Jefferson County Republican and the East Jefferson Sentinel, both papers owned and edited by Hansen, hereinbefore mentioned as the editor, and the retraction articles are as follows:

"Genesee Gulch Protest Denied.

"We apologize!

"Dr. Gilbert I. Lininger this week called attention to a misstatement in last week's Sentinel and Republican, erroneously placing Dr. Lininger in the role of having received a liquor permit for the Overbrook Knight club in Genesee Gulch.

"Exactly the opposite was true. Dr. Lininger headed a group of 13 residents of the Genesee Gulch area, who petitioned to the Board of County Commissioners to have the Overbrook club liquor license cancelled.

"Here is a copy of the protest petition:

"Board of County Commissioners,

Jefferson County, Colorado.

"Gentlemen:

"This petition of the home owners in Genesee Gulch, respectfully requests that the license of the Overbrook Knight club, in Genesee Gulch be cancelled. This is purely a residential community and we would like to keep it that way.

"Overbrook Knight club is a hide-out for people who want to drink and carry on in a manner objectionable to the established morals of the people of this community. We, therefore, look to you to keep our mountain area

clean. We formally request that the license for this nuisance be cancelled forthwith.

"Respectfully yours,

Gilbert I. Lininger,
A. Haanstadt,
Lou J. Putnam,
Coval W. Diehl,
J. P. Mather,
Wm. R. Shaw,
Wayne E. Shroyer,
A. M. Boyd,
B. F. Kennedy,
Clem W. Collins,
Harry W. Bundy,
Lila J. Thiede,
G. W. Parnell."

The articles appear as plaintiff's exhibits A and B.

The trial court ruled that the petition was libelous per se; however, its presentation to the board of county commissioners was a qualified privileged communication, and, as a matter of law, no liability attached to defendant by reason of the presentation of the petition to the board of county commissioners. The trial court, over the repeated objections of counsel for defendant, admitted evidence concerning whether or not defendant caused the petitions to be published in the two newspapers herein referred to and evidence as to the effect and damage of the newspaper publications, and submitted the case to the jury under instructions as to the newspaper publications. Counsel for defendant continually objected to any evidence as to the newspaper publication because the complaint alleged only one cause of action, that of circulating and presenting the petition to the board of county commissioners.

Error is specified as follows: "I. Each publication of a libel is a separate cause of action, and if recovery is sought for repetition of a libel, each repetition must be declared upon as a separate claim. II. Where the amount

of the verdict is excessive and grossly disproportionate to any reasonable compensation warranted by the facts, the verdict must be set aside on appeal as being based on prejudice and passion. III. The publication, if libelous, is libelous per quod and not per se."

A number of interesting questions emerge from the record as made. The points specified were raised on motion for a new trial, which was denied. The motion of defendant for a directed verdict on the grounds stated, as well as other grounds plainly appearing from the record, should have been sustained. It is unmistakably clear that under the instructions of the court, the verdict which was returned was based solely on actual damages occurring to plaintiff as a result of the newspaper publications. The trial court, by instruction No. 4 told the jury that the presentation of the petition to the board of county commissioners was a privileged communication for which no liability attached to the defendant; and in the same instruction, the jury was told that the only issue remaining for determination was whether or not defendant caused the petition to be published in the newspapers, and if so, what damage plaintiff suffered thereby. Plaintiff's complaint is wholly silent as to the newspaper publications. The only cause of action set out in the complaint was that of the instigation, circulation and the presentment to the board of county commissioners. Over the repeated objections of counsel for defendant, the court, without support in the pleadings, permitted testimony concerning the publication of the petition in the newspapers and the damage claimed thereby. There is virtually no argument of counsel for plaintiff on this alleged error, he apparently being contented with the sufficiency of a statement that there is no variance between the issues and the proof. It further is stated in the brief of defendant in error that the publication of the petition in the two newspapers on July 14, 1948, constituted the sole claim of plaintiff in her complaint for damages, together with the interrogatories

and deposition, and that defendant had full knowledge of the issues and defended accordingly. Without specifically so stating, no doubt counsel for plaintiff, and the trial court, proceeded under Rule 15 (b) R.C.P. Colo., relating to a variance. Language peculiarly pertinent to the situation here presented was used by Mr. Justice Alter in *W. T. Grant Co. v. Casady*, 117 Colo. 405, 188 P. (2d) 881, as follows: "Rule 15 (b) R.C.P., and our decisions relating thereto, are urged by plaintiff in support of his position that a variance, even if such be conceded, would not justify a reversal of the judgment. This rule would be controlling were it not for the fact that the issue presented to the jury was not raised by the pleadings and was not tried by express or implied consent of the parties. Defendant's counsel by his motions and tendered instructions emphatically objected to a trial of any issue not presented by the pleadings."

No law is better settled than that each publication of a libel is a separate and independent claim, and that each must be pleaded as a separate cause of action. According to the complaint in the instant case, a single libel occurred on July 1, 1948 by the preparation, circulation and presentment of the petition to the board of county commissioners. Under the complaint, when this publication was properly declared to be a privileged communication, that ended plaintiff's lawsuit as declared. If amendments could have been successfully maintained, none were offered. Plaintiff sought no exemplary damages, and, of course, none were awarded. Only under such an allegation, the contemporaneous publications, if proven to have been caused by defendant, might have been admissible to show malice as to the first publication.

It is doubtful whether or not plaintiff could maintain this action as set up in her complaint, for the reason there is nothing in the petition as presented to the county commissioners, or as published, that is personally applicable to the plaintiff. It is not ascertainable from the

petition who is defamed, and that could be ascertained only by innuendo. By the petition here presented, if any individual could be said to have been defamed, it could easily have been applicable to some other person or persons beside the plaintiff.

■ ■ Under these prevailing facts, we find, as a matter of law, and so determine, that the trial court was in error in holding the petition as presented to be libelous per se. We see nothing in the petition that specifically points to plaintiff or would tend to expose her to public hatred or contempt. To be libelous per se, the petition must contain defamatory words specifically directed at the person claiming injury, which words must, on their face, and without the aid of intrinsic proof, be unmistakably recognized as injurious.

■ The trial court held the petition as presented, to be a qualified or conditional privilege. While the class of absolutely privileged communications is carefully narrowed by the decisions, its scope embraces communications relating to legislative and judicial proceedings, and other acts of state. We believe this communication to fall within the class including acts of state, as the privilege here prevailing is one for the promotion of public welfare; shows on its face that it is for the well-being of society, in which defendant had a direct interest, and his good faith in presenting the petition is not seriously questioned.

■ At folio 316 of the record the court by its first instruction stated: "Defendant in his answer admits that he prepared said petition and caused it to be signed and presented the same to the Board of County Commissioners but denies that he caused the petition to be published in any newspaper and denies that the statements in said petition are false and in addition thereto alleges that said petition is true." At folio 815 is shown the objection of counsel for defendant to this instruction on the ground that defendant's answer contains no such denial. In fact there is no mention of the newspaper publica-

tions anywhere in any of the pleadings. The fact that this instruction was erroneous and prejudicial needs no further comment.

In view of our determination of seemingly important questions, it follows that a number of instructions given by the court to the jury upon other theories of the case are erroneous, and that the verdict returned thereunder cannot be upheld; therefore, they need no further discussion.

Pursuant to the views herein expressed, the judgment of the trial court is reversed.

MR. CHIEF JUSTICE JACKSON, MR. JUSTICE STONE and MR. JUSTICE HAYS concur in the result.