Kathleen HAYES, Plaintiff–Appellee,

v.

Roger W. SMITH, Jr., and Samantha Smith, Defendants–Appellants.

No. 88CA1789.

Colorado Court of Appeals, Div. II.

Dec. 19, 1991.

Rehearing Denied Jan. 30, 1992.

As Amended Feb. 25, 1992.

Certiorari Denied July 20, 1992.

Stayton & Brennen, Rowe P. Stayton, Denver, for plaintiff-appellee.

Hall & Evans, Daniel R. Satriana, Jr., John E. Bolmer, II, Denver, for defendants-appellants.

Opinion by Judge DUBOFSKY.

In this action for defamation, defendants, Roger Smith and Samantha Smith, appeal the judgment entered on a jury verdict awarding damages to plaintiff, Kathleen Hayes. We reverse.

Plaintiff and defendants were active participants in a conservative Christian community. Plaintiff is a high school teacher, lecturer, and writer. She and Samantha Smith jointly created a corporation to further business ideas related to their common religious outlook. Over time, the relationship between the plaintiff and defendants deteriorated resulting in harassment and verbal accusations.

In May 1986, defendants met with plaintiff's school superintendent with the ostensible purpose of obtaining the superintendent's help in stopping plaintiff from harassing them. Plaintiff alleged that, during the meeting between defendants and the superintendent, defendants defamed her by, *inter alia*, stating that: (1) plaintiff had tried to establish a homosexual relationship with Samantha Smith; (2) plaintiff had "proposed marriage" to Samantha Smith; and (3) plaintiff had in the past been discharged from a teaching position.

Thereafter, based primarily on these statements to the superintendent, plaintiff filed this defamation action. The jury returned a verdict in favor of the plaintiff and awarded $1,000 in actual damages and $26,000 in special damages.

## I.

Defendants argue that the trial court erred in determining that the statements accusing plaintiff of homosexual conduct were slanderous *per se* and in, therefore, instructing the jury on that basis. We agree.

Cases in various jurisdictions have reached different conclusions in deciding whether statements which falsely accuse a person of being a homosexual or engaging in homosexual activity constitute slander *per se.* Compare *Moricoli v. Schwartz*, 46 Ill.App.3d 481, 5 Ill.Dec. 74, 361 N.E.2d 74 (1977) (statements referring to a singer as a "fag" held to be slander *per quod,* and not slander *per se* ) and *Boehm v. American Bankers Insurance Group*, 557 So.2d 91 (Fla.Dist.Ct.App.1990) ("The modern view considering the issue, has not found statements regarding sexual preference to constitute slander *per se* let alone intrinsic evidence of express malice.") *with Manale v. New Orleans*, 673 F.2d 122 (5th Cir.1982) (Police role call statement referring to plaintiff as "ya little fruit" held to be slanderous *per se* ) and *Mazart v. State*, 109 Misc.2d 1092, 441 N.Y.S.2d 600 (1981) (inasmuch as certain homosexual activity was still a crime in New York, reference to plaintiffs as being "members of a gay community" was slanderous *per se* ). Our analysis of the present state of the law

leads us to conclude that the *per se* classification is inappropriate for the statements at issue here.

Historically, defamation was actionable *per se* only if the defamatory remark imputed a criminal offense; a venereal or loathsome and communicable disease; improper conduct of a lawful business; or unchastity by a woman. *See* Restatement (First) of Torts § 569 (1938) and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

However, the Restatement (Second) of Torts reflects a trend toward limiting the *per se* category of slander to those instances in which the defamatory remark is apparent from the publication itself without reference to extrinsic facts. *See* Restatement (Second) of Torts §§ 571–574 (1977); *Gertz, supra* (White, J., dissenting). As to the specific matter at issue here, the Restatement (Second) of Torts expressly left open the issue whether an accusation of homosexuality fell into the *per se* category.

■ The primary advantage to a plaintiff claiming slander *per se* is that certain damages are presumed if the statement is so categorized, *e.g.*, loss of reputation, and therefore, need not be proved. This presumption has been considered desirable because injuries such as loss of reputation can be difficult to prove since the recipients of the information may be reluctant to testify that the publication affected their relationship with the plaintiff and because the words may affect the recipients' view of the relationship in subtle ways of which the recipient is not necessarily aware. *See Gertz, supra* (White, J., dissenting).

■ Another advantage to a *per se* classification is that the plaintiff need not prove the statements were defamatory within the context in which they were made. In *Gertz*, the court was also concerned that *per se* classifications inhibit and punish freedom of speech by making it too easy to prove defamation and damages.

■ In *Gertz, supra*, the majority indicated that *per se* classifications and presumed damages, even where constitutional, are not favored. Indeed, the *Gertz* court

held that, as to a public official or public figure, a presumed damage award without proof of reckless or malicious conduct violates the First Amendment rights of the publisher of the false statement.

Thus, the right to presumed damages no longer depends entirely on the nature of the accusation; rather, it also depends on whether the statements were made about a public official or public figure with malice or recklessness as defined in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

■ Furthermore, here, the trial court determined, without objection, that plaintiff was a public official. Peter S. Crane, Note, *Defamation of Teachers: Behind the Times?*, 56 Fordham L.Rev. 1191 (1988). Thus, the First Amendment constitutional protections of *New York Times v. Sullivan* and its progeny, including *Gertz*, are applicable here. *Cf. Rowe v. Metz*, 195 Colo. 424, 579 P.2d 83 (1978) (*Gertz* inapplicable when plaintiff is *not* a public official *and* there is non-media defendant). *But see Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (First Amendment protections apply to both media and non-media defendants). *See also Bucher v. Roberts*, 198 Colo. 1, 595 P.2d 239 (1979) (applying Gertz to private non-media defendant). Moreover, defamatory statements to the superintendent may have been of a public concern. *See Dun & Bradstreet v. Greenmoss Builders, Inc., supra*, and *Rowe v. Metz, supra*. For these reasons, we conclude that *Rowe v. Metz* does not preclude the application of *Gertz* here.

■ In *Gertz*, however, the court emphasized that, even though presumed damages may be unavailable, plaintiff can recover for any actual injuries caused by the defamation. The *Gertz* court stated:

Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

These non-economic and non-reputation damages can be awarded without an initial or predicate determination awarding damages because of either harm to reputation or economic loss. *Time v. Firestone,* 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976); *Walker v. Colorado Springs Sun, Inc.,* 188 Colo. 86, 538 P.2d 450 (1975).

In many instances, it is easier for a person injured by defamatory comments to prove personal humiliation and mental anguish and suffering than to prove economic loss or reputation damage. Since these non-economic damages do not require predicate or initial proof of reputation or economic loss, a person who has been slandered will be compensated even if there is a failure of proof as to the reputation or economic loss claims. *Time v. Firestone, supra.*

Furthermore, this approach brings the damages in libel and slander cases more in line with the damages provided for other types of tort actions. *See Gertz, supra.*

Moreover, in this modern era, new methods exist for proving economic and reputational damages in a defamation case, including testimony by economists, psychologists, and other expert witnesses. These factors lessen the need for *per se* classifications before plaintiffs can recover damages.

We, therefore, interpret the import of *Gertz, Firestone,* and *Walker* as furthering an earlier trend to limit and not expand the use of *per se* characterizations and presumed damages in defamation cases.

There are also several other factors which bear on our decision to conclude that accusations of homosexuality are not slanderous *per se.*

First, the fact that sexual activities between consenting adults of the same sex are no longer illegal in Colorado tends to indicate that an accusation of being a homosexual is not of such a character as to be slanderous *per se. See* Colo.Sess.Laws 1975, ch. 171, § 18–3–405 at 630.

Second, if a person is falsely accused of belonging in a category of persons considered deserving of social approbation, *i.e.,* thief, murderer, prostitute, etc., it is generally the court's determination as to whether such accusation is considered slander *per se* so that damages are presumed. *Inter–State Detective Bureau, Inc. v. Denver Post, Inc.,* 29 Colo.App. 313, 484 P.2d 131 (1971). A court should not classify homosexuals with those miscreants who have engaged in actions that deserve the reprobation and scorn which is implicitly a part of the slander/libel *per se* classifications. *See Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

■ For a characterization of a person to warrant a *per se* classification, it should, without equivocation, expose the plaintiff to public hatred or contempt. *See Lininger v. Knight,* 123 Colo. 213, 226 P.2d 809 (1951). However, there is no empirical evidence in this record demonstrating that homosexuals are held by society in such poor esteem. Indeed, it appears that the community view toward homosexuals is mixed. *See Denver Revised Municipal Code* 28–91, et seq. (1990); *Boulder Revised Code* 12–1–2, et seq. (1981); Colorado Executive Order In Regard to Human Rights (Colo. Dec. 10, 1990).

■ Furthermore, as previously indicated, in the *Gertz* holding, the United States Supreme Court has indicated that *per se* damages, even if constitutional, are not favored. The thrust of that holding is that a court should use caution in expanding categories in which *per se* classifications are made and presumed damages are awarded.

Although we agree that, in light of plaintiff's showing of malicious or reckless conduct by defendants, there is no constitutional prohibition against these false accusations of homosexuality being treated as slander *per se,* we, nevertheless, are unwilling to do so. We reach this conclusion because of the *Gertz* hostility to expanding the scope of defamation *per se* and because there are serious doubts whether homosexuality meets the criteria for such a classification. We, therefore, reverse the trial court on this issue.

## II.

Plaintiff implicitly argues that, even if the statements made here would not be slanderous *per se* outside her employment context, since they were made to her supervisor in an employment context, they did injure her in her profession as a teacher and on that basis, are slanderous *per se.* We do not agree.

We recognize that teachers' reputations are very vulnerable to injury when they are the subject of false accusations. *See Wertz v. Lawrence,* 66 Colo. 55, 179 P. 813 (1919). We conclude, however, for the reasons stated above, that false statements concerning homosexuality are not slander *per se* even though they arise in an employment context and are directed at plaintiff's business reputation.

In this regard, we further note the availability of proven actual damages to compensate an injured plaintiff in this setting. Plaintiff is entitled to receive compensation not only for economic damages and loss of reputation, but also for other proven damages, *i.e.,* humiliation, mental suffering. *See Gertz v. Robert Welch, Inc., supra,* and *Walker v. Colorado Springs Sun, Inc., supra.* Thus, even though the statements are not accorded slander *per se* status, plaintiff, on retrial, may receive compensation for those damages proven to have resulted from the statements.

## III.

Although plaintiff did not request and thus did not receive a presumed damage instruction, we conclude that the slander *per se* instruction here was error nonetheless. The improper advantage plaintiff received by the slander *per se* instruction was that she did not have to prove as part of her claim that in the context in which the statements were made, they were defamatory and caused damage to her. *See CJI–Civ.* 22:9 (1989). On retrial, plaintiff must prove that the statements, in the context in which they were made, were defamatory and that they in turn caused her

injury. *See CJI–Civ.* 22:9, 22:11, and 22:12 (1989).

The judgment is reversed, and the cause is remanded for a new trial.

SMITH and ROTHENBERG, JJ., concur.