Stephen MILES, Plaintiff,

v.

NATIONAL ENQUIRER, INC., a Florida Corporation; John South; David Wright; and John Does 1–20, Defendants.

No. 98–WY–528–CB.

United States District Court, D. Colorado.

Jan. 27, 1999.

Walter Lee Hill, Julia Yoo, Boulder, CO, for Plaintiff.

Gerson Zweifach, Williams & Connolly, Washington, DC, Andrew M. Low, David, Graham & Stubbs, LLP, Denver, CO, for Defendants.

### ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This matter comes before the Court upon Defendants' motion for summary judgment because Plaintiff has failed to come forward with clear and convincing proof of actual malice. Having reviewed the file and being fully advised of the premises, for the reasons that follow, the Court **FINDS** and **ORDERS** that Defendants' motion for summary judgment is **GRANTED IN ITS ENTIRETY**.

### *Discussion*

The Court gave a detailed factual recitation in its December 14, 1998, Order on Summary Judgment. The relevant facts have not changed and are hereby incorporated by reference. Any additional facts will be discussed in the Court's analysis.

"Summary judgment is appropriate if the pleadings and other documents submitted before the court 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir.1998) (quoting Fed.R.Civ.P. 56(c)). Accordingly, this Court views the evidence in the light most favorable to Miles. *See Baptiste v. J.C. Penney Co., Inc.*, 147 F.3d

1252, 1255 (10th Cir.1998). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and a 'genuine' issue exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 621 (10th Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Given these standards, this Court turns to Defendants' motion for summary judgment.

■ As stated in the December 14 Order, Plaintiff must adduce clear and convincing proof of actual malice to sustain a cause of action for defamation. To meet this burden, Plaintiff must produce "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Thus, the "appropriate summary judgment question [is] whether the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Liberty Lobby, Inc.*, 477 U.S. at 255–56, 106 S.Ct. 2505. Of course, Defendants must first come forward with evidence showing that there is no genuine issue of material fact on this issue; if Defendants meet that burden, the burden shifts to Plaintiff.

■ Additionally, it is not enough for a defendant to simply state that he *believed* the truth of a publication and thus that no actual malice exists. The *St. Amant* Court specifically recognized this notion. *See* 390 U.S. at 732, 88 S.Ct. 1323; *see also Diversified Management, Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1106 (Colo.1982) (en banc) (adopting the entire *St. Amant* definition of reckless disregard for private plaintiffs in matters of public concern). "The finder of fact must determine whether the publication was indeed made in good faith." *St. Amant*, 390 U.S. at 732, 88 S.Ct. 1323. The *St. Amant* Court explained this idea further:

Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation.

*Id.* The Court understands this "good faith" requirement to mean simply that it is not enough for a defendant to rest on a belief of truth as a defense to reckless disregard. He must have some credible reason for holding a belief of truth. If a defendant does not, he is not entitled to First Amendment protection. *See id.*

Further, because issues of intent are now before the Court, the Court must determine whether calling one a "pedophile" or "sex offender" is defamatory per se or defamatory per quod. *See Keohane v. Wilkerson*, 859 P.2d 291, 301 (Colo.App. 1993), *aff'd*, 882 P.2d 1293 (Colo.1994). This determination has practical implications in this case. If the statements are defamatory per se, Plaintiff need not prove that Defendants intended the defamatory implications of a statement because the statements would have no positive implication—the statements would be defamatory as a matter of law.

■ Whether a statement is defamatory per se or per quod is a question of law. *See id.* "A statement may be considered defamatory per se if it is specifically directed at the person claiming injury and, on its face and without extrinsic proof, it is unmistakably recognized as injurious." *Id.* (citing *Lininger v. Knight*, 123 Colo. 213, 226 P.2d 809 (1951)); *see also Lind v. O'Reilly*, 636 P.2d 1319, 1320 (Colo.App. 1981). To decide whether a statement is defamatory per se, the Court must examine the statement on its own, without the aid of inducements, colloquialisms, innuendos, and explanatory circumstances. *See Keohane*, 859 P.2d at 301.

■ "Historically, a statement constituted defamation per se if it imputed a crimi-

nal offense; a venereal or loathsome disease; improper conduct of a lawful trade, business, profession or office; or unchasity of a woman." *Id.* (citing numerous cases). In contrast, a statement is defamatory per quod if it requires innuendo or extrinsic facts to establish its defamatory character, and requires pleading special damages. *See id.*

 Although merely accusing one of being a homosexual is not defamatory per se, *see Hayes v. Smith,* 832 P.2d 1022, 1025 (Colo.App.1991), Miles alleged that Defendants named him a "pedophile" and "sex offender." There can be no doubt that both statements subjected Miles to a category of persons "considered deserving of social approbation." *Id.* at 1025. The Court has no doubt that such accusations subjected Miles to public ridicule and hatred. Such statements are defamatory per se. *See id.*

However, a declaration that these statements are defamatory per se also requires that no extrinsic evidence is necessary to determine that the statements are "of and concerning the plaintiff." *Lind,* 636 P.2d at 1320. The statements here meet that criteria. The November article stated: "Included on that list are dozens of pedophiles and sex offenders living in Boulder. One of them, gay photographer Stephen Miles...." Without any extrinsic evidence, there is no doubt that this statement is of and concerning Stephen Miles. Accordingly, the Court finds that the statements in this case are defamatory per se.

## A. Miles' Pedophile Allegation Must be Dismissed

 Plaintiff has argued that he can show Defendants' actual malice by relying

on the standard announced in *Kuhn v. Tribune–Republican Publishing Co.,* 637 P.2d 315, 318 (Colo.1981) (en banc). In *Kuhn,* the plaintiffs, public officials, sued for defamation for newspaper articles that claimed that certain ski areas were chosen for government use because such ski areas provided ski passes for the personal use of the plaintiffs. *See id.* at 316. A jury verdict was entered for the plaintiffs, but the court of appeals reversed. *See id.* The Colorado Supreme Court found that a finder of fact could infer actual malice if an investigation is grossly inadequate. *See id.* at 319 (citing, in part, *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967)).

The *Kuhn* court found that given this standard, a jury could conclude that the reporter in that case acted with actual malice. *See id.* The reporter admitted that he had no basis for most of his erroneous statements and that he failed to take the time to corroborate most of the allegations in the article (despite the fact that there was no urgency to publish the article). *See id.* And while the reporter verified that the department had received free ski passes, with no factual support the reporter wrote that the plaintiffs personally received ski passes. *See id.* at 317. Reporting such statements under these facts amounted to fabrication; the reporter simply made up the portion of the story that stated that the plaintiffs personally received ski passes. *See id.* at 319. "In this context, a reporter's failure to pursue the most obvious available sources of possible corroboration or refutation may clearly and convincingly evidence a reckless disregard for the truth."[1] *Id.* (citation omitted).

---

**1.** Defendants have argued that the *Kuhn* standard is not good law and should not be used as a proper way to infer actual malice. They cite to numerous cases, including *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989), for the proposition that a failure to investigate is not evidence of actual malice. Indeed, a "[f]ailure to investigate does not in itself establish bad faith." *St.*

*Amant,* 390 U.S. at 733, 88 S.Ct. 1323 (citation omitted). Defendants fail to take these assertions for their literal truth.

The Court accepts as law, as it must, that a mere failure to investigate is not in itself evidence of actual malice. But *Kuhn* is not inconsistent with this proposition. In *Kuhn,* the Colorado Supreme Court found that when an investigation is "grossly inadequate," (i.e., some compelling or contradictory facts would

In any event, *Kuhn* is distinguishable from the current case. There are simply no compelling facts like those present in *Kuhn* that display a "grossly inadequate" investigation. At most, the facts demonstrate a mere failure to investigate further—something the Supreme Court has specifically stated is not enough to constitute actual malice by itself. There was no fabrication of facts here. South and Wright had credible evidence for their assertions. As the Court will explain, John South and David Wright researched their stories and, based on that research, wrote their stories.

The uncontroverted record demonstrates that John South and David Wright had a good faith belief that Miles was and is a pedophile. First, an unnamed source told John South that Plaintiff was a pedophile.[2] South's interview notes corroborate this assertion. South's research file also contained *Boulder Daily Camera* articles which recount that in 1989, Miles had been arrested on suspicion of taking pornographic photographs of juveniles and giving them drugs and alcohol. Miles was also arrested and charged, but never convicted, in connection with a child pornography charge.

Further, the author of the November article, David Wright, interviewed Miles. Miles admitted he had an interest in young men. Plaintiff purportedly showed Wright several "erotic" pictures of young men. Wright interpreted these photographs to be of underage boys, as young as thirteen. Miles also recounted the child exploitation charges against him. Thus, despite the fact that Miles stated he was not a pedophile, the record shows that Wright had a good faith belief that Miles was indeed a pedophile.

The fact that further investigation may have proved that Miles was not a pedophile in the medical sense is of no consequence in the Colorado courts. *See Anderson v. Cramlet*, 789 F.2d 840, 844 (10th Cir.1986). What matters is that there was no contradictory evidence or lack thereof that even hinted that South and Wright should have investigated further. No reasonable juror could conclude that this investigation was "grossly inadequate." No ground exists for concluding that Defendants fabricated any facts. No

compel a reporter to investigate) a failure to investigate or fabrication of facts can constitute sufficient proof of actual malice. *See* 637 P.2d at 319.

This Court's reading of Supreme Court precedent is consistent with this assertion. For instance, in *Butts*, the Supreme Court found that the trial jury in that case must have found the reporter's investigation to be "grossly inadequate" to sustain a finding of actual malice. *See* 388 U.S. at 156, 87 S.Ct. 1975. Further, *New York Times v. Sullivan*, the case from which Defendants' "failure to investigate" rule originated, is not contrary to finding that "gross inadequacy" as evidence of actual malice. *See* 376 U.S. at 287–88, 84 S.Ct. 710. In *New York Times*, the Supreme Court found that a mere failure to investigate did not constitute actual malice in that case because it did not establish that the New York Times' own reporters were aware of contradictory information. *See id.* at 287, 84 S.Ct. 710. The Supreme Court did not state that a gross failure to investigate can never constitute evidence of actual malice. Moreover, *Butts* was published after *New York Times* and was written in light of that opinion.

The Supreme Court has recognized that the reckless disregard standard must be developed on a case by case basis. *Butts* and *Kuhn* were simply very strong facts for finding actual malice. It is only logical to consider this gross inadequacy as evidence of actual malice in these circumstances, to do otherwise ignores reality, the good faith requirement, and undercuts the very rationale for having a heightened burden of proof. This heightened standard is a compromise between First Amendment rights and defamation law—it does not allow reporters to be held unaccountable to a state's general laws. Accordingly, while there may be instances where a "grossly inadequate" investigation may present of a genuine issue of material fact on actual malice, this is by no means meant to apply in all cases.

2. South has lawfully exercised his right under the Colorado Press Shield Law to refuse to disclose the identity of this confidential source. *See* Colo.Rev.Stat. § 13–90–119 (1997). Defendants are thus not subject to any legal presumption for exercising this right. *See id.*

facts indicate that Defendants harbored serious doubts as to the truth of their statements; in fact, the facts point to just the opposite, that Defendants believed in good faith that Plaintiff was a pedophile. In sum, the entire record convincingly shows that the reporters believed their statements to be true.

In sum, this is simply a different case from *Kuhn*. The lack of investigation and contradictory evidence that the reporter in *Kuhn* unearthed is not present in this case. Further, there is no proof of intentional disregard for the truth or fabrication. Instead, the reporters investigated and wrote the stories that their research revealed. Plaintiff has presented no further evidence which shows South or Wright harbored serious doubts as to the truth of their assertions. In circumstances such as this, the Supreme Court has dictated that the First Amendment must prevail over defamation law.

Since the plaintiff has failed to show that there is a genuine issue of material fact, summary judgment is appropriate. No genuine issue of material fact exists as to whether Defendants clearly and convincingly acted with actual malice in naming Plaintiff a pedophile. Therefore, Plaintiff's libel and slander "pedophile" allegations are DISMISSED WITH PREJUDICE.

### B. Miles' Sex Offender Allegation Must Be Dismissed

Like the pedophile allegation, the issue here is whether there is a genuine issue of material fact as to whether Defendants acted with actual malice in naming Plaintiff a sex offender. Defendants first argue that Plaintiff lacks proof that they intended the defamatory implication of calling one a sex offender. However, as previously discussed, the Court finds that calling one a sex offender is defamatory per se. Accordingly, Plaintiff need not prove that Defendants *intended* the negative defamatory implications of calling one a sex offender (as if a positive implication of calling one a sex offender exists). Simply put, when a statement is defamatory per se, there is no positive implication to a statement; thus, by uttering the defamatory statement the actor imputes the negative implication as a matter of law.

However, Defendants also assert that regardless of whether or not Defendants intended to call Miles a sex offender, David Wright (the author of the November article) harbored a good faith belief that Miles was a sex offender. (Wright Dep. at 67–68.) He based this belief on the fact that Miles stated he was a sex offender, that Miles was arrested on sexual exploitation charges, and that Miles spent time in jail. (Wright Dep. at 70–71.) He learned this information from his interview with Miles and through the October story. (Wright Dep. at 71.) As previously stated, it is of no consequence that the penal code definition of "sex offender" is different from Wright's perception. *See Anderson*, 789 F.2d at 844. Indeed, it is quite reasonable to think that a sex offender is a person who has committed sex offenses, regardless of whether that person was ever convicted of a sex offense. Plaintiff's relevant allegations go to whether Defendants named him a "sex offender," not whether Defendants named him a "convicted sex offender."

Plaintiff first responds that the only information Wright had that Miles was a sex offender is information he learned from his attorneys after he wrote the story. However, a close reading of Wright's deposition reveals that this assertion is simply not true. Plaintiff's counsel questioned Wright about what knowledge he had that Miles was a sex offender *at the time the deposition was taken.* Defendants' counsel painstakingly made clear that the questions did not go to what Wright knew at the time he wrote the article. It is only later in the deposition that one learns Wright had the information previously stated by the Court at the time he wrote the article.

Plaintiff next argues that South admitted to reviewing a list of sex offenders that reside in Boulder and Miles was not on it. Further, no tangible "b-List" of suspects

existed. Thus, he contends, Defendants harbored actual malice as to whether Miles was a sex offender. The Court rejects this argument.

In the November article, Wright referred a "b-List" of potential suspects. These were even the most unlikely suspects in the JonBenet murder investigation. This list in no way refers to sex offenders: It refers to unlikely potential suspects in the JonBenet murder investigation. As previously stated, there is strong evidence that Wright harbored a belief that Miles was a sex offender as he understood that term. Wright did not understand sex offender to be a person who has been convicted of a sex offense.

Moreover, there is no evidence that John South ever named Miles a sex offender.

The fact that no tangible "b-list" exists is of no consequence. "B-list" does not necessarily mean a list of people on a piece of paper. At oral argument, Defendants' counsel explained that the term is often used to mean only a secondary list. For instance, when a host invites a person to a party only after others have declined, he have been on the "b-list" of invitees. There is no evidence that Wright meant anything other than this in the November article. The Court refuses to find that a genuine issue of material fact exists on the subject of actual malice merely because no tangible piece of paper with Miles' name on it exists. Such a contention is neither material nor genuine. Detective Farmer admitted that the police investigated Miles as an unlikely suspect and this is enough to satisfy the Court that Wright's statement was made in good faith.

For the foregoing reasons, no genuine issue of material fact exists as to whether Defendants clearly and convincingly acted with actual malice in naming Plaintiff a sex offender. Therefore, Plaintiff's libel and slander "sex offender" allegations are **DISMISSED WITH PREJUDICE**.

## C. Miles' Ancillary Claims Must Be Dismissed

 The actual malice standard applies equally to ancillary tort claims that arise from libel and slander statements. *See Lewis v. McGraw–Hill Broadcasting Co.*, 832 P.2d 1118, 1124–25 (Colo.App. 1992). Accordingly, because this Court has found that no genuine issue of material fact exists as to whether Defendants acted with actual malice in naming Plaintiff as a pedophile or sex offender, Plaintiff's claims for outrageous conduct and intentional infliction of emotional distress are **DISMISSED WITH PREJUDICE**.

### *Conclusion*

The Court realizes that to an individual whose name has been trumpeted in the public press as a "pedophile" and "sex offender," this result seems harsh and unfair; nonetheless, this accords with the trend of modern decisions of the United States Supreme Court, starting with *New York Times v. Sullivan*, that have severely restricted the traditional law of defamation in cases such as this to only the very unusual circumstance where actual malice exists. The Colorado courts have accepted this trend, beginning with *Diversified Management*. As a result, courts are more frequently granting summary judgment because plaintiffs must leap over a very high hurdle to get their case before a jury. Whether or not that is a good result is a question that must be answered politically rather than legally.

Accordingly, for the foregoing reasons, Defendants' motion for summary judgment is **GRANTED IN ITS ENTIRETY**. All of Plaintiff's claims are **DISMISSED WITH PREJUDICE**. Each party shall bear their own costs.