Patricia W. HOFFLER, Complainant–
Appellant,

v.

State of Colorado—STATE PERSONNEL
BOARD, and Department of Corrections,
Respondents–Appellees.

No. 97CA1489.

Colorado Court of Appeals,
Div. III.

Nov. 12, 1999.*

Rehearing Denied Jan. 6, 2000.

Certiorari Granted Aug. 21, 2000.

* Prior opinion announced December 24, 1998,
 *WITHDRAWN*. Petitions for rehearing *GRANT-* *ED*.

Knapp & Sachs, P.C., Benjamin Sachs, Denver, Colorado, for Complainant–Appellant.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Carolyn Lievers, Assistant Attorney General, Denver, Colorado, for Respondent–Appellee Department of Corrections.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Mary S. McClatchey, Assistant Attorney General, Denver, Colorado, for Respondent–Appellee Colorado State Personnel Board.

Opinion by Judge RULAND.

Complainant, Patricia W. Hoffler, seeks review of the State Personnel Board's order affirming the termination of her employment by the Department of Corrections (DOC). We affirm.

Complainant's termination resulted from her conduct during an investigation involving charges of sexual harassment against one of her supervisors. Specifically, during the investigation by the Inspector General's Office, complainant initially told investigators on two occasions in effect that she had been sexually harassed by the supervisor. However, complainant later recanted her initial statements and maintained, both through the balance of the investigation and at the hearing, that her supervisor did not sexually harass her. Following the hearing, the supervisor was terminated for misconduct.

Based on these conflicting statements, DOC terminated complainant on the basis that her conduct violated DOC administrative regulations.

On appeal before an Administrative Law Judge (ALJ), and subsequently before the Board, the DOC's disciplinary termination was upheld. Complainant now seeks review of those decisions.

I.

Complainant initially contends that the statements she provided in the proceeding involving her supervisor were privileged and thus improperly relied upon as the basis for her termination by DOC. We disagree.

The determination of privilege is a question of law for the court. *Club Valencia Homeowners Ass'n v. Valencia Associates,* 712 P.2d 1024 (Colo.App.1985).

Generally, a common law privilege protects one who offers statements in the course of a judicial or quasi-judicial proceeding from most consequences for those statements. *Department of Administration v. State Personnel Board,* 703 P.2d 595 (Colo. App.1985). The privilege was created to protect participants in these proceedings from liability for defamatory communications. *See Lininger v. Knight,* 123 Colo. 213, 226 P.2d 809 (1951). The policy underlying the privilege is that for the judicial process to function effectively, those who participate in it must be able to do so without being hampered by the fear of private suits for defamation. *See MacLarty v. Whiteford,* 30 Colo. App. 378, 496 P.2d 1071 (1972).

While this privilege is most frequently applied in libel and slander cases, it has also been applied in a case in which statements given in a quasi-judicial proceeding resulted in disciplinary action against the participant. Thus, in *Department of Administration v. State Personnel Board, supra,* the opinion reflects that a state employee made comments about another employee during a meeting held to investigate certain misconduct charges. The first employee was later suspended as a result of his comments. A division of this court reversed the suspension, finding that the employee's comments were privileged and that, therefore, the disciplinary action was improper.

Contrary to complainant's contention, however, we do not view *Department of Administration v. State Personnel Board, supra,* as support for her claim of privilege here. Un-

like in that case, here there are specific regulations governing complainant's conduct.

■ First, DOC Reg. 1150–1, Section V(C), then in effect, provided that:

It is the responsibility of all Department of Corrections and contract personnel to cooperate fully with the office of the Inspector General.

In addition, DOC Reg. 1450–1 then provided:

Each person in public office in the executive branch of government:

. . .

2) Shall demonstrate the highest standards of personal integrity, truthfulness and honesty and shall through personal conduct inspire public confidence and trust in government.

Taken together, these regulations required complainant to assist the investigators with full and accurate disclosure of relevant information throughout their investigation and to testify truthfully at any hearing. Conversely, complainant makes no claim in this court that the regulations in any manner constitute the invalid exercise of DOC authority or that she was unaware of the requirements of these regulations. Similarly, there is no claim that the public policy supporting adoption of the regulations for the correction system is in any manner subject to question. *See LaChance v. Erickson,* 522 U.S. 262, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998) (the Due Process Clause does not preclude sanctions against a federal employee for making false statements in response to charges of misconduct). Indeed, the need for cooperation and integrity in the corrections system parallels that for law enforcement in general in the context of efficient administration and public confidence in the system.

Under these circumstances, we conclude that the common law privilege does not apply. To conclude otherwise would in our view undermine a valid public policy, potentially frustrate the investigation of improper conduct on the part of corrections officers, and create a safe harbor for deliberate violation of valid regulations.

To the extent complainant relies upon *Lininger v. Knight, supra,* we view that case as inapplicable as well. *Lininger* addresses the privilege in the context of a petition presented in good faith to a county asserting that certain acts were required to enhance the public welfare. Here, the Board was faced with conflicting statements, some of which had to be willfully false, that impacted an investigation of misconduct on the part of a supervisory official.

## II.

■ Complainant next contends that DOC is barred by the doctrine of judicial estoppel from terminating her employment. Specifically, complainant asserts that DOC took the position in the supervisor's proceeding that her recantation of the allegations of sexual assault was false. Now, according to complainant, DOC is taking a contrary position. We are not persuaded.

To prevail under a theory of judicial estoppel, complainant must establish, among other things, that the two positions taken by DOC are totally inconsistent. That is, the truth of one position must necessarily preclude the truth of the other. *See Estate of Burford v. Burford,* 935 P.2d 943 (Colo.1997). Here, however, while DOC maintained in the supervisor's case that claimant's testimony was false, the termination decision in this proceeding was based upon the deliberate inconsistent statements made by complainant and the violation of the regulatory requirements for integrity and cooperation in an investigation. Hence, judicial estoppel does not apply.

## III.

■ Complainant next contends that the doctrine of collateral estoppel precludes DOC from terminating her employment. Specifically, she argues that a determination whether her initial statements to the investigators were false was necessarily litigated in the supervisor's disciplinary proceeding and that the initial statements were found to be true. Accordingly, complainant reasons that DOC is thus precluded from pursuing a claim for violation of the regulations. Again, we are not persuaded.

The principal issue litigated in the supervisor's proceeding was whether any sexual harassment occurred. Here, however, that issue is only peripherally involved in the context of complainant's deliberate and inconsistent statements about the incidents. Hence, the doctrine of collateral estoppel does not apply because the same issue is not being litigated. *See Central Bank Denver, N.A. v. Mehaffy, Rider, Windholz & Wilson,* 940 P.2d 1097 (Colo.App.1997). Stated another way, the outcome here does not depend upon which version of her statements is true.

### IV.

Complainant finally contends that the Board erred in failing to hold that the burden of proof was improperly shifted to her. According to complainant, because the letter of termination was based on her having taken inconsistent positions relative to the charges against her supervisor, DOC should have been required to elect which version of complainant's information was correct and sought termination on that basis. We disagree.

DOC's principal position and the one it sustained before the ALJ on an evidentiary basis was that complainant violated the quoted regulations for the reasons previously stated. Contrary to complainant's contention, DOC carried its burden in this regard, and thus the Board's affirmance was correct.

We have considered and are unpersuaded by complainant's remaining contentions for reversal of the Board's order.

Order affirmed.

Judge JONES and Judge DAVIDSON concur.