Patricia HOFFLER, Petitioner,

v.

COLORADO DEPARTMENT OF CORRECTIONS and Colorado State Personnel Board, Respondents.

No. 00SC116.

Supreme Court of Colorado,
En Banc.

July 2, 2001.

---

Knapp & Sachs, P.C., Benjamin Sachs, Denver, CO, Attorney for Petitioner.

Ken Salazar, Attorney General, Carolyn Lievers, Assistant Attorney General, Business & Licensing Section, Denver, CO, Attorneys for Respondent Colorado Department of Corrections.

Ken Salazar, Attorney General, Denise De-Forest, Assistant Attorney General, Business & Licensing Section, Denver, CO, Attorneys for Respondent Colorado State Personnel Board.

Vonda G. Hall, Denver, CO, Attorney for Amicus Curiae Colorado Association of Public Employees.

Chief Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' opinion in *Hoffler v. Colorado Department of Corrections*, 7 P.3d 989 (Colo. App.1999). Patricia Hoffler, an employee at the Colorado Department of Corrections, provided statements to the department in the course of an investigation of a co-employee's sexually harassing conduct. Hoffler initially alleged that the co-employee sexually harassed her. She later recanted these allegations, and testified at an administrative hearing that she had not been sexually harassed. Based on Hoffler's conflicting statements given during the investigation the department terminated her employment. Hoffler challenged her termination, arguing that her statements regarding the alleged sexual harassment were protected by common-law privilege and thus could not be used in disciplinary proceedings brought against her. An administrative law judge disagreed, and this decision was subsequently affirmed by the State Personnel Board and the court of appeals.

■ We hold that the doctrine of common-law privilege that grants absolute immunity to witnesses in quasi-judicial proceedings does not bar disciplinary proceedings

brought against a state employee who makes false statements in the course of an official investigation. Accordingly, we affirm the judgment of the court of appeals.

## I.

Patricia Hoffler ("Hoffler") was employed as a correctional officer at the Colorado Department of Corrections ("DOC"). In September 1994, the DOC began a formal investigation of Hoffler's supervisor, Frank Rice ("Rice"), based on alleged incidents of sexual harassment. The DOC interviewed Hoffler as part of the investigation. Hoffler told investigators that she had been sexually harassed by Rice, and signed two separate statements prepared by DOC investigators on the basis of this information.

After signing the two statements, Hoffler recanted her allegations of sexual harassment. She was again interviewed by a DOC investigator and, for the remainder of DOC proceedings, maintained that she had never been sexually harassed by Rice. At Rice's disciplinary hearing, she again stated that Rice had not sexually harassed her.

The DOC subsequently initiated pre-disciplinary proceedings against Hoffler, and conducted two Rule 8–3–3[1] meetings to determine whether any adverse action should be taken in response to Hoffler's statements made during the Rice investigation. Hoffler did not offer any additional testimony at these meetings. The DOC terminated Hoffler's employment based on Hoffler's misrepresentations and unwillingness to cooperate during the Rice investigation.

Hoffler appealed her termination and an administrative law judge upheld the DOC's decision. This ruling was affirmed, in turn, by the State Personnel Board. Hoffler filed a timely appeal in the court of appeals, arguing that the statements she provided in the course of the DOC investigation were privileged and therefore could not be used as a basis for her disciplinary termination. The court of appeals disagreed, finding that Hoffler's conduct violated DOC regulations and the policies underlying the common-law doctrine of immunity, and therefore, upheld her termination.

We granted certiorari to consider whether the common-law privilege applicable to statements offered in quasi-judicial proceedings can be applied to statements made by a state employee during an investigation of misconduct involving a co-employee.[2] We now hold that common-law privilege does not prevent a state employee's statements made in the course of a quasi-judicial proceeding from being used in subsequent personnel disciplinary proceedings brought against that employee.

## II.

Under common-law principles, an individual who is an integral part of the judicial process is provided absolute immunity from subsequent civil damages liability. *In re Stepanek*, 940 P.2d 364, 368 (Colo.1997). The rationale behind this common-law immunity is "to preserve the independent decision-making and truthfulness of critical judicial participants without subjecting them to the fear and apprehension that may result from a threat of personal liability." *Id.* (noting that absolute immunity allows key participants in the judicial process to perform their respective functions without harassment or intimidation). The doctrine of absolute immunity is further justified given certain procedural safeguards inherent to the judicial process:

The insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of error on appeal are just a few of the many checks on malicious action by judges. Advocates are restrained not only by their professional obligations, but by the knowl-

---

1. Now Rules R–6–10 to –6–12, 4 C.C.R. 801 (2001).

2. We granted certiorari on the following issue:
   (1) Whether the court of appeals erred in holding that the absolute privilege this Court has found applicable to statements offered in quasi-judicial proceedings could not be applied to

statements made by Petitioner during an investigation of misconduct involving another employee, and that such privilege had been overridden by informal rulemaking of the Department of Corrections, without any grant of legislative authority.

edge that their assertions will be contested by their adversaries in open court. Jurors are carefully screened to remove all possibility of bias. Witnesses are, of course, subject to the rigors of cross-examination and the penalty of perjury.

*Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The judicial process is therefore structured "to enhance the reliability of information and the impartiality of the decisionmaking process," and justifies granting immunity to those participants acting within the scope of their official duties. *Id.*

In Colorado, absolute immunity has been extended to judges, prosecutors, witnesses, and other persons who perform official functions in the judicial process. *See State v. Mason,* 724 P.2d 1289, 1290–91 (Colo. 1986)(state judges immune for their judicial acts); *Stepanek,* 940 P.2d at 368 (recognizing prosecutorial immunity and finding that county attorneys are also entitled to immunity when performing prosecutorial functions); *Wagner v. Bd. of County Comm'rs,* 933 P.2d 1311, 1314 (Colo.1997)(witness entitled to immunity for grand jury testimony). We have also recognized that administrative officials, acting in a quasi-judicial role, are entitled to absolute immunity. *Stepanek,* 940 P.2d at 368; *see also State Bd. of Chiropractic Exam'rs v. Stjernholm,* 935 P.2d 959, 968–69 (Colo.1997)(Chiropractic Board members immune when performing quasi-adjudicative functions such as licensing and conducting hearings regarding professional discipline); *Mason,* 724 P.2d at 1291 (members of Parole Board, a state administrative agency, are entitled to immunity for quasi-judicial acts such as granting, denying, or revoking parole). Thus, absolute immunity shields officials who engage in judicial or quasi-judicial functions from damages liability. *Stjernholm,* 935 P.2d at 968.

## A.

Hoffler contends that the proceedings in which she provided statements were quasi-judicial, and that as a result, her statements are absolutely privileged. Quasi-judicial activity is defined as "[o]f, relating to, or involving an executive or administrative offi-cial's adjudicative acts." *Black's Law Dictionary* 1258 (7th ed.1999). In *Cherry Hills Resort Development Company v. Cherry Hills Village,* we identified the essential characteristics of quasi-judicial activity:

> Quasi-judicial action ... generally involves a determination of the rights, duties, or obligations of specific individuals on the basis of the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question.

757 P.2d 622, 625 (Colo.1988); *see id.* at 627 (explaining that "the central focus ... should be on the nature of the governmental decision and the process by which that decision is reached"). Key participants in quasi-adjudicatory administrative proceedings are therefore granted absolute immunity because they function analogously to key participants in judicial proceedings.

As relevant here, DOC administrative regulations set forth the procedures applicable to staff disciplinary proceedings. Disciplinary actions against employees are initiated by an appointing authority. DOC Admin. Reg. 1450–12, *available at* http://www.doc.state.co.us/admin_reg/in-dex_99b.htm; *see also* § 24–50–125(1), 7 C.R.S. (2000); Rule R–6–2, 4 C.C.R. 801 (2001). If the appointing authority subsequently imposes disciplinary action against the employee, the employee may appeal that decision to the State Personnel Board and, in turn, to the court of appeals. DOC Admin. Reg. 1450–12, *available at* http://www.doc.state.co.us/admin_reg/in-dex_99b.htm; §§ 24–50–125, –125.4, 7 C.R.S. (2000)(reiterating constitutional standards for discipline and outlining procedures for disciplining state employees); *see also Dep't of Insts. v. Kinchen,* 886 P.2d 700, 704–06 (Colo.1994)(explaining role of state personnel system in employee discipline actions). Thus, a disciplinary hearing conducted by the Personnel Board is subject to direct judicial review. In addition, the hearing is adversarial in nature, and the employee is entitled to be represented, to present oral and documentary evidence, and to cross-examine adverse witnesses. *Kinchen,* 886 P.2d at 705.

The hearing officer, in reviewing the appointing authority's decision, must make written findings of fact and conclusions of law. *Id.*[3]

Based on these factors, it is clear that the disciplinary proceedings initiated by the DOC against Hoffler's co-employee, Rice, involved quasi-judicial proceedings. In 1995, Rice appeared at a hearing before the State Personnel Board regarding the allegations of sexual harassment. Hoffler provided testimony at the hearing related to the alleged incidents of sexual harassment perpetrated by Rice. Under these circumstances we are satisfied that Hoffler's statements, made as a witness in the Rice hearing, were made in a quasi-judicial setting and are entitled to immunity.

The DOC argues that absolute immunity was not triggered in this case because Hoffler was disciplined based on contradictory statements made during the investigation preceding Rice's personnel hearing. There is certainly a point at which the scope of a quasi-judicial process can be extended too far. For example, if the DOC had not pursued Rice's investigation to the personnel hearing stage at which Hoffler testified, Hoffler would have no claim to absolute immunity.

In this case, Hoffler initially told investigators that Rice had sexually harassed her. As the investigation progressed, she retracted her original statements, and in her testimony at Rice's hearing maintained that Rice had not harassed her. Under these facts, it is impossible to isolate the investigatory phase from the administrative hearing phase of Rice's disciplinary proceeding and find, as the DOC argues, that Hoffler was disciplined only on the basis of statements made during the initial investigation.

### B.

■ Although Hoffler was entitled to absolute immunity for her statements made during administrative proceedings against Rice, we find that this immunity does not extend to subsequent personnel disciplinary proceedings brought against her by the DOC.

Our conclusion today parallels that reached in *Stepanek*, where we determined the scope of a county attorney's immunity in the context of a cause of action requesting attorney fees and an imposition of sanctions pursuant to C.R.C.P. 11. *Stepanek*, 940 P.2d at 366. In that case, a county attorney filed a petition for temporary guardianship over Bernard Stepanek, an incapacitated person, based on allegations that he had been sexually abused by his legal guardian, Louis Stepanek. The attorney filed the petition despite insufficient evidence supporting the claim of sexual abuse. The county attorney later filed a motion to discontinue temporary guardianship, and, in response, the Stepaneks requested attorney fees pursuant to section 13–17–102, 5 C.R.S. (2000), and sanctions pursuant to C.R.C.P. 11. *Id.* at 367.[4]

We found, first, that a county attorney serves a prosecutorial function in filing a petition for temporary guardianship and therefore, is entitled to absolute immunity from a fee request made under section 13–17–102. *Id.* at 368–70 (noting that in filing such a petition, a county attorney "initiates a cause of action that is intimately associated with the adjudicatory process")(quotations omitted). We justified this result by explaining that attorney fees "represent the functional equivalent of money damages in that they hinder the county attorney's ability to take prompt, decisive action to protect at-risk adults from potentially abusive situations." *Id.* at 369–70.

We then turned to the Stepaneks' C.R.C.P. 11 claim, finding that a grant of absolute immunity does not shield attorneys from the imposition of C.R.C.P. 11 sanctions. *Id.* at 370. In reaching this conclusion, we explained that:

11 provides that if an attorney files a pleading that is not, to the best of his or her knowledge, well grounded in fact and submitted for a proper purpose, the court shall impose appropriate sanctions.

---

3. As in the present case, the officer conducting the hearing may be an administrative law judge.

4. Section 13–17–102 allows for an award of attorney fees if the court determines that the action was substantially frivolous, groundless, or vexatious. § 13–17–102(6), 5 C.R.S. (2000). C.R.C.P.

C.R.C.P. 11 safeguards the judicial process by compelling attorneys to submit pleadings which are truthful and advance meritorious legal arguments. As an officer of the court, a county attorney who files a petition for temporary guardianship must ensure, as far as reasonably possible, that the integrity of judicial proceedings is not compromised.

*Id.* We reasoned that if otherwise immune attorneys are placed above the regulation of the legal profession, the integrity of the judicial process, as well as the purpose upon which a grant of immunity is founded, would be compromised. *Id.* Therefore, we concluded that absolute immunity does not immunize a county attorney from the rules governing the legal profession and the manner in which adjudicatory proceedings are conducted. *Id.*

■ *Stepanek* makes clear that participants in the judicial process who are otherwise entitled to absolute immunity for their judicial or quasi-judicial acts are not necessarily shielded from disciplinary sanctions based on those acts.[5] Perhaps the strongest justification for this exception to absolute immunity is that the policies underlying immunity from civil liability for damages differ from those underlying disciplinary proceedings. As discussed previously, immunity from civil liability advances the court's goal of preserving the judicial process, and is justified given certain procedural safeguards inherent to the judicial process. However, disciplinary proceedings are undertaken to curb unprofessional conduct, and as such, would be rendered entirely ineffectual if individuals who were otherwise immune from civil liability were also shielded from disciplinary action.

Taking these considerations into account, we find that a grant of absolute immunity does not extend to a personnel disciplinary proceeding such as the one in this case.[6] During the course of a DOC investigation of a co-employee, Hoffler knowingly provided contradictory statements regarding the co-employee's conduct toward her. In short, she failed to provide truthful information and failed to cooperate with the DOC during the course of the investigation. She was later subject to disciplinary action by the DOC based on these misstatements.

Under these circumstances, we cannot hold that absolute immunity shields Hoffler from the imposition of disciplinary proceedings brought by her employer. The doctrine of absolute immunity does not relieve a state employee from compliance with basic employee codes of conduct. To hold otherwise would defeat the basic policy underlying state employee disciplinary proceedings.

## III.

For the reasons stated above, we conclude that the doctrine of common-law privilege that grants immunity to witnesses in quasi-judicial proceedings does not extend to disciplinary proceedings against a state employee who makes false statements in the course of an official investigation. We affirm the judgment of the court of appeals.

---

5. Hoffler contends that because she is entitled to absolute immunity for her testimony at the quasi-judicial proceedings, section 8-2.5-101(1)(a), 3 C.R.S. (2000), prevents the DOC from using this testimony in a disciplinary action brought against her. We disagree. Section 8-2.5-101 makes it unlawful for an employer to take action against its employee *"solely for ... testifying* before a committee of the general assembly or a court of law ...." § 8-2.5-101(1)(a)(emphasis added). In this case, the DOC initiated disciplin-

ary proceedings because Hoffler lied in the course of official departmental proceedings. The disciplinary action was not based on the sole fact that she provided testimony in a quasi-judicial proceeding.

6. We therefore overrule *Department of Administration v. State Personnel Board*, 703 P.2d 595 (Colo.App.1985), to the extent that it is inconsistent with our holding today.